UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Emma Cunningham, <br> By and Through her Court Appointed <br> Conservator, Robert Bunn, Esq., <br><br>     Plaintiff <br><br> v. <br><br> New Century Mortgage Corporation, et al. <br><br>     Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Case No. 05-cv-1693 <br> )    RBW (Judge Walton) <br> ) <br> ) <br> ) |

**RESPONSE TO DEFENDANTS SAXON MORTGAGE SERVICES, INC. AND STEPHEN F.J. ORNSTEIN'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS**

The terms used herein have the same definitions as in the Plaintiff's Opposition to the Motion to Dismiss. Since Premier Financial has adopted Defendants' Saxon and Ornstein's Reply Brief to the Opposition of the Plaintiff ("Reply"), see Motion of Premier filed October 14, 2005 and attachments thereto, Premier shall be deemed referred to whenever the Defendants or Saxon are referenced.

    A.    The Reply asserts that the Plaintiff's claims of fraud are not pled with particularity, that allegations of scienter are supposedly lacking in the Complaint, the Deed of Trust is not invalid on its face, and that the allegations of incapacity do not render the Deed of Trust void. None of these positions are supported by either the allegations in the Complaint or by District of Columbia law.[1]

    The argument that the Complaint should contain more particularity on the fraud count ignores the rule that when the facts are peculiarly within the knowledge of the Defendants, the

---

[1] At least now, the Defendants seem to concede District of Columbia law applies and not the law of Maryland. See Motion to Dismiss, 5.

particularity rules are relaxed. In Re Rockefeller Center Properties, Inc. Securities Litigation, 311 F. 3d 198, 216 (3rd Cir. 2002) ("Rockefeller"). The Complaint alleges the facts that can be garnered from the documents that were supplied by the attorney for Premier, and which are the only closing documents possessed by the Conservator. There had to have been many more documents for the loan underwriting and closing, such as the loan application, appraisal, credit report, commitment letter, owner's affidavit, and FP7 forms. There were obviously conversations between the Defendants and Emma Cunningham. The content of those conversations are unknown to the Plaintiff's Conservator because with her dementia, Plaintiff could not relate them. Thus, they could not be quoted verbatim in the Complaint as the Defendants seem to ask.

Because of Mrs. Cunningham's dementia, it is not possible for her to communicate these conversations to the undersigned. They can only be found by discovery. It is sufficient in such a case to allege the fraud that is obvious from the documents. Also, the failure of the lender Defendants to adequately disclose to Mrs. Cunningham the consequences of not repaying the loan, that her account was being used to pay the loan, and the fact that she did not have the resources to repay the loan, all of which are alleged in the Complaint, are sufficient to set out a case of fraud. These allegations are all contained on Pages 5-7 of the Complaint.

This information was certainly material to the decision to mortgage the house. Non-disclosure of material information, when there is a duty to disclose, constitutes fraud under District of Columbia law. Pyre v. Jamaica Nutrition Holdings, Ltd., 497 A. 2d 118, 131 (DC 1985); Coughlin v. U.S., 209 F. 2d 165, 173 (DDC 2002). A mortgage lender in the District has a duty to disclose material facts to a borrower. If the lender does not make these disclosures,

then the deed of trust may be voided for fraud. Greene v. Gibraltar Mtg. Inv. Corp., 488 F. Supp. 177 (DDC 1980) ("Greene").

The arguments for the strict interpretation of Rule 9 that Saxon advocates assumes the existence of a Plaintiff who can communicate in detail the fraudulent acts or omissions of the Defendants. However, in this case, we do not have a Plaintiff who can recall the acts or omissions. So the Conservator has to decipher what would have been the fraudulent conduct from the text of the few documents we possess and from the partial reports of persons tangentially involved.

The lack of a Plaintiff who can communicate the fraudulent acts and omissions, thus, making the Defendants the sole repository of the particular facts of the date, place, time, and content of the fraudulent conversations or omissions, gives rise to the relaxation of the particularity rule. Rockefeller, supra. Saxon has access to all of the other participants in the scheme to defraud Mrs. Cunningham and can learn the content of their conversations. Saxon can easily, without discovery, ascertain these conversations. They are not at a loss to answer the Complaint.

The Complaint has to be read in the light most favorable to the Plaintiff when ruling on a Rule 12(b)(6) Motion. Rockefeller, 215. The Complaint is what is being judged, and not facts outside of the Complaint since this is not summary judgment. The Defendants have not even answered, so it is not even a judgment on the pleadings case. The documents attached to the Complaint show that there had to have been fraud committed since the Plaintiff received nothing from the loan which is plain from the Note. See Complaint, Exhibit B-2 (Note), 1. The money from the Loan proceeds were obviously used for purposes other than Mrs. Cunningham's such as paying what is obviously John Cunningham's child support. See Complaint, Exhibit D

3

(Settlement Sheet), 2. The allegations that Saxon knew of the fraudulent scheme, participated therein, and received fees and payments from Mrs. Cunningham are recitations of acts and omissions by Saxon with sufficient specificity to meet the Rule 9(b) requirement when the particular conversations with their misrepresentations and failures to disclose are solely within the Defendants' knowledge.

B. Defendants argue that there was no knowledge on the part of Saxon or Ornstein of any fraud. However, they assert facts in their argument that are not contained in the Complaint. Since they have not answered and there are no other sources of facts other than the Complaint, it is difficult to understand the source of the assertions that Defendants Saxon and Ornstein did not attend the closing, or that they did not process the loan application. These are items for an Answer, and not for bare assertions in a Motion to Dismiss. The Complaint did not state that Ornstein and Saxon were not at the closing. At this point, there is no fact that is in the possession of the Plaintiff to show that Saxon and Orstein were not at the closing and that they did not process the application. If the Defendants wish to assert such facts, they need to answer the Complaint.

The Complaint merely has to state that the Defendants knew that Mrs. Cunningham was incapacitated. It does not have to state how that knowledge came into their possession, especially since Mrs. Cunningham cannot relate to the Plaintiff what contact she had with the Defendants. The Defendants refused to speak to the Conservator, so he could not learn from them what they observed of Mrs. Cunningham.

The definition of dementia set forth in the Opposition shows that if Mrs. Cunningham had been diagnosed in May, 2004 with that illness, she would have had to have exhibited

observable symptoms in December, 2004. The Plaintiff is entitled to these favorable inferences in considering a Rule 12(b)(6) Motion. Rockefeller.

The documents, coupled with the diagnosis of Mrs. Cunningham's physician in the Complaint, Exhibit C, certainly demonstrate that there were enough facts for the Defendants to know that Mrs. Cunningham had to have been mentally incapacitated to sign such documents. They saw a mortgage free home (no mortgage was paid off on the Settlement Sheet) being mortgaged for a loan, the proceeds of which were not received by Mrs. Cunningham. The Note states that Mr. Cunningham received the proceeds. The Defendants try to argue that John Cunningham may have been taking care of Mrs. Cunningham, but there are no facts in the Complaint to support such an assertion. Indeed, the Complaint states that John Cunningham used the proceeds for himself. Complaint, III (11). The Defendants had to have known Plaintiff's age since they needed to know she was of the age of majority. The Settlement Sheet shows that proceeds were used for child support, which obviously was not Mrs. Cunningham's obligation. Mrs. Cunningham's account was used to repay the loan from which she received no proceeds. Complaint, III, 19. Therefore, the documents sufficiently illustrate facts that should have given knowledge to Saxon that Mrs. Cunningham's Deed of Trust was being procured by fraud.

There are no facts to support the assertion that Ornstein and Saxon did not process the loan application for Mr. Cunningham. Again, this is material for an Answer. The Complaint has to be taken with the allegations read in the light most favorable to Plaintiff, and in the light most favorable to Plaintiff, they would be read as showing that the Defendants did have knowledge of Mrs. Cunningham's financial circumstances, mental incapacity, and how the loan proceeds were to be applied.

5

C. The Defendants argue that the Deed of Trust is not invalid on its face even if it was notarized by a Maryland notary in the District of Columbia. The Defendants do not say that the Deed of Trust was <u>signed</u> by Mrs. Cunningham in the State of Maryland and the notarization occurred in the State of Maryland. They only say that the Settlement Sheet says the "closing" occurred at Pinnacle in Maryland. Reply Brief, 4. But "closing" is not tantamount to signing. Signing is executing the documents. Closing is the entire process.

It is curious that there is no Affidavit or other statement by the title company accompanying the Reply stating that the notarization and signature took place in the State of Maryland. The statement on the Settlement Sheet that closing occurred in Maryland does not state that all of the documents were signed in Maryland only that it was the place of settlement.

As asserted in the Opposition, Pinnacle has told the undersigned that the documents were signed by Mrs. Cunningham in the District of Columbia. If that were the case, even if the documents were notarized by a Maryland notary in Maryland after they were signed in the District of Columbia, the notary would be fraudulent and, thus, void. <u>Jackson</u> v. <u>Byrd</u>, No. 825-01 RP (DC Super. Ct., Opinion dated August 25, 2003) ("<u>Jackson</u>"). The statement in the notary was that Mrs. Cunningham had signed the notary in Maryland. See Complaint, Exhibit B-1 (Deed of Trust), Notarial Page. A Maryland notary cannot notarize in the District of Columbia. D.C. Code §42-143(a); <u>Jackson</u>. If the Maryland notary public notarized a signature that occurred in the District of Columbia, even though the notary seal was attached in Maryland, it would be fraudulent where the notary form said that Mrs. Cunningham was in "said District" which meant the State of Maryland.[2]

---

[2] It is obvious that the notary was set up for the District of Columbia, and when it was changed to Maryland, the words "District" were not changed, but the District would have to refer to the State of Maryland because that is the only jurisdiction appearing on the notary form after it was changed to a Maryland notary form.

The Defendants cite <u>Bynum</u> v. <u>Equitable Mortgage Corp.</u>, 2005 WL 818619 (DDC 2005) ("<u>Bynum</u>") as authority that a Maryland notary can notarize a signature in the District of Columbia. <u>Jackson</u>, a Superior Court case, squarely rules that a deed notarized in the District by an out of state notary is void. <u>Bynum,</u> without citing a single case, refused to follow <u>Jackson</u> saying the United States District Court was not bound by a Superior Court opinion. It distinguished <u>Jackson</u> as a case involving a deed, where <u>Bynum</u> involved a deed of trust. <u>Bynum</u> said there was no fraud in the latter case where <u>Jackson</u> was concerned with fraud. <u>Bynum</u>, 21. <u>Bynum</u>, contrary to the majority rule, decided that a notarization by a Maryland notary is cured by D.C. Code §42-403 which states that certain defects in notaries listed in D.C. Code §42-404(a) are cured if not challenged in a Court proceeding within six (6) months of recordation. D.C. Code §42-404(c) specifically precludes fraud from this protection.

<u>Bynum</u> should not be followed by this Court for several reasons. A United States District Court opinion is not the law of the Circuit or the District. <u>In Re Executive Office of the President</u>, 215 F. 3d 20, 24 (DC Cir. 2000). In interpreting a District of Columbia statute, the rule is that this Court should first consult District of Columbia court decisions on the statute. If there are no such decisions, it should consult decisions on similar statutes in other states. <u>In Re Smith's Estate</u>, 77 F. Supp. 217, 218 (DDC 1948). <u>Bynum</u> never gave any reason for ignoring the applicable Superior Court case which is consistent with cases in other jurisdictions that have voided in state notarizations by out of state notaries. E.g., <u>Garry</u> v. <u>Serrato</u>, 699 SW 2d 275 (TX App. 1985); <u>Frazer</u> v. <u>McMillan</u>, 179 N.E. 564 (Ind. 1932); 66 CJS, Notaries, Sec. 6(d).

This Court should implement the District's policy, which reflects the majority rule, and was enunciated by <u>Jackson</u>. This Court should follow <u>Jackson</u> so there will not be two

7

competing rules for notary publics. Prudent notaries would follow the more conservative Jackson rule, so this Court would not be dictating a change in behavior.[3]

In any event, Bynum is no obstacle to applying Jackson to the Deed in this case to void it since Bynum restricted its ruling to deeds of trust. Bynum, 22. Also, Bynum would not be authority for not invalidating a deed of trust which contained a fraudulent notary which was executed in the District of Columbia but said it was executed in Maryland. Bynum said no fraud was at issue in that case. The notary on the Deed to John Cunningham also states explicitly that Mrs. Cunningham appeared in the State of Maryland, which is contrary to what the title company told the Conservator. The Deed notary form, therefore, would also be fraudulent. A fraudulent Deed of Trust or Deed does not have the protection of having to be challenged within six (6) months of recordation. D.C. Code §§42-403 and 42-404(c).

The allegations of Pinnacle's fraudulent conduct in the Complaint certainly encompasses a fraudulent notary. Complaint, III, 24 and 25. Saxon and Ornstein quiescently accepted this obvious badge of fraud. Greene, 181.

D.    The Defendants mistakenly state that the Plaintiff only alleges that the Plaintiff was affected by dementia before executing the Deed of Trust and not at the time of execution. This is incorrect since the Complaint states clearly that "On May 4, 2004, Emma Cunningham began consultations with her physician Dr. Patricia Harris, a gerontologist. From that date, Emma Cunningham has been diagnosed with dementia of the Alzheimer's type." Complaint, III, 1. It also says "Emma Cunningham, from at least May 4, 2001 (obviously from the date of the letter it can be seen that 2001 should have meant 2004), [was] incapable of forming the mental elements and capacity necessary to enter into or understand the ramifications to her and her

---

[3] The Judge who wrote the Bynum opinion was not a member of the U.S. District Court for the District of Columbia, but of the Northern District of Illinois. Bynum, 2n.2.

8

financial situation of contracts such as the Note, Deed, and Deed of Trust…." Complaint, III, 2. The Complaint also states "Emma Cunningham did not understand the consequences of the Deed, Loan, and Loan Documents, and did not have the capacity to enter into them." Complaint, III, 2.

The clear meaning of the Complaint is that from May 4, 2004, including the date of closing through the date of the Complaint, Mrs. Cunningham has had dementia and lacked capacity to enter into contracts. The definitions set forth in the Opposition show that dementia, which is the term that Dr. Harris used in her letter, is not a disease that comes and goes. It is permanent. See Opposition, 6. There are sufficient allegations that at the time of entering into the Deed and Deed of Trust, Mrs. Cunningham was suffering from dementia and did not have the capacity to enter into the contracts. The Complaint clearly alleges that from at least May, 2004 forward, Mrs. Cunningham was suffering from a lack of capacity and that period included December 20, 2004.

The Complaint sufficiently alleges that Mrs. Cunningham did not have the capacity to understand the documents or their ramifications. See Complaint, III, 7.

E.   The Defendants state that a Deed of Trust is only voidable, not void, as to a bona fide purchaser for value if fraud is the only basis for voiding the document. They cite a case that was mentioned in the Opposition. Osin v. Johnson, 243 F.2d 653, 656 (DC Cir. 1957); Opposition, n.2.[4] The fallacy in this argument is that under Greene, even a bona fide purchaser for value cannot take a fraudulently obtained deed of trust without risking its voidance. In that case Judge Green ruled, in voiding a fraudulently obtained deed of trust in the hands of a purported holder in due course, that a holder of a fraudulent deed of trust has the burden of proof

---

[4] In Osin v. Johnson as pointed out in the Opposition, the Court found that the plaintiff was not incapacitated. Osin v. Johnson, supra., 654, Opposition, n.2.

9

to rebut the "badge of fraud" surrounding the transaction. <u>Greene</u>, 180-181.  Quoting <u>Hill</u> v. <u>Hawes</u>, 144 F. 2d 511, 512 (DC Cir. 1944), Judge Green said "Competent businessmen do not purchase notes in substantial sums executed by parties unknown to them whose credit they have not investigated." <u>Greene</u>, 181.  In the context of the present case, Saxon would have known of Plaintiff's incapacity if they were competent and, thus, cannot claim the lack of notice needed to be a bona fide purchaser for value.

Additionally, there is no basis for assuming, for purposes of the Motion to Dismiss, that Saxon is a bona fide purchaser for value.  There was no admission in the Complaint that they were a bona fide purchaser or that they gave value.  Therefore, it is premature to dismiss the Complaint on the assumption that Saxon is a bona fide purchaser for value since there is no allegation in any pleading to that effect.

F.    The Defendants state that it may have been that John Cunningham used some of the proceeds for his grandmother.  That is a fact that needs to be alleged in an Answer as a defense.  The Complaint alleges that he did not use the proceeds for Mrs. Cunningham and the Settlement Sheet and Note support that allegation.  There is no pleading that states that John Cunningham took care of his grandmother.

The allegations in the Complaint have to be taken as true in order to judge whether they state a case of lack of consideration.  They do plead such a case since they show that Mrs. Cunningham received no consideration for sacrificing her house and bank account so that John Cunningham could receive $120,000 from the Defendants.  Lastly, the citation of a case from Arizona is certainly applicable when there is no District of Columbia case on point, <u>In Re Smith's Estate,</u> supra., and the Arizona case is often cited in texts.  See CJS, Contracts.

For the reasons set forth herein, in the Opposition, and in the Complaint, the Motion to Dismiss should be denied.

Respectfully submitted,

_____/s/_____
Robert Bunn, Esq.
D.C. Bar No. 124677
910 17th Street, N.W.
Suite 800
Washington, D.C. 20006-2606
(202) 293-5552
*Conservator for Emma Cunningham*

CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a copy of the foregoing pleading was mailed by first class U.S. mail, postage prepaid, to the following persons on the _____ day of October, 2005:

Adam M. Spence, Esq.
The Law Offices of Adam M. Spence, P.C.
105 West Chesapeake Avenue
Suite 400
Towson, MD  21204
*Counsel for Defendant New Century Mortgage Corporation*

David W. Goewey, Esq.
Michelle Patail, Esq.
Venable, LLP
575 7th Street, N.W.
Washington, D.C.  20004-1601
*Counsel for Defendants Saxon Mortgage Services, Inc.*
*and Stephen F.J. Ornstein, Esq.*

Brian L. Moffett, Esq.
Catherine Bledsoe, Esq.
Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC
The Garrett Building
233 East Redwood Street
Baltimore, MD  21202-3332
*Counsel for Defendant Premier Financial Co.*

John Cunningham
6858 West Forest Road
Hyattsville, MD  20785

Leo A. Roth, Jr., Esq.
110 South Washington Street
Rockville, MD  20850
*Counsel for Defendant Premier Financial Co.*

                                                  _____/s/_____
                                                  Robert Bunn