

# REGIONAL SALES CONTRACT

This SALES CONTRACT ("Contract") is made on **12/15/2005** _____ ("Contract Date")
between **Benjamin F Fantroy, Sr. , ,** _____ ("Purchaser")
and **Robert Bunn, Conservator for Emma Cunningham , ,** _____ ("Seller")
who hereby confirm and acknowledge by their initials and signatures below the prior disclosure that in this real estate transaction
**Long & Foster Real Estate, Inc. Chevy Chase Sales** _____ ("Listing Company") represents
the Seller, and **Long & Foster Real Estate, Inc. Chevy Chase Sales** _____ ("Selling Company") represents
☒ the Purchaser OR ☐ the Seller. The Listing Company and Selling Company are collectively referred to as ("Broker"). (If the brokerage firm is acting as a dual representative for both the Seller and the Purchaser, then the appropriate disclosure form is attached to and made a part of this Contract.)

**1. REAL PROPERTY.** The Purchaser will buy and the Seller shall sell for the sales price ("Sales Price"), the Seller's entire interest in the land (with all improvements, rights and appurtenances) described as follows: TAX Map/ID # **3843//0013** _____ Legal Description: Lot(s) **13** _____
Block/Square **3843** _____, Section **NE** _____, Subdivision or Condominium **Brookland** _____,
Unit # _____, Parking Space(s) # _____, County/City **District Washington** _____
Deed Book/Liber _____, Page/Folio # _____, Street Address: **911 Evarts Street, NE** _____
State **DC** _____, Zip Code **20018** _____, ("Property").

**2. PERSONAL PROPERTY, FIXTURES AND UTILITIES.** The Sales Price includes the following personal property and fixtures: A. Any existing built-in heating and central air conditioning equipment, plumbing and lighting fixtures, sump pump, attic fans, storm windows, storm doors, screens, installed wall-to-wall carpeting, window shades, blinds, smoke and heat detectors, tv antennas, exterior trees and shrubs and, B. The items marked YES below as currently installed or offered.

| YES | NO | | YES | NO | | YES | NO | | YES | NO | |
|-----|----|--|-----|----|--|-----|----|--|-----|----|--|
| ☐ | ☐ | Stove or Range | ☐ | ☐ | Disposer | ☐ | ☐ | Ceiling Fan(s)# ____ | ☐ | ☐ | Alarm System |
| ☐ | ☐ | Cooktop | ☐ | ☐ | Freezer | ☐ | ☐ | Washer | ☐ | ☐ | Intercom |
| ☐ | ☐ | Wall Oven(s)# ___ | ☐ | ☐ | Window Fan(s)# ___ | ☐ | ☐ | Dryer | ☐ | ☐ | Storage Shed(s)# |
| ☐ | ☐ | Refrigerator(s) # ___ | ☐ | ☐ | Window A/C Unit(s) # ___ | ☐ | ☐ | Furnace Humidifier | ☐ | ☐ | Garage Opener(s)# |
| ☐ | ☐ | w/ Ice maker # ___ | ☐ | ☐ | Pool, Equip. & Cover | ☐ | ☐ | Electronic Air Filter | ☐ | ☐ | w/ remote(s) # |
| ☐ | ☐ | Dishwasher | ☐ | ☐ | Hot Tub, Equip. & Cover | ☐ | ☐ | Central Vacuum | ☐ | ☐ | Playground Equipment |
| ☐ | ☐ | Built-in Microwave | ☐ | ☐ | Satellite Dish and Equip | ☐ | ☐ | Water Treatment System | ☐ | ☐ | Wood Stove |
| ☐ | ☐ | Trash Compactor | ☐ | ☐ | Window Treatments | ☐ | ☐ | Exhaust Fan(s) | ☐ | ☐ | Fireplace Screen/ Doors |

Other: **"As Is" as attached to property.** *seller makes no warranties or representations as to the existence, condition or fitness for intended purpose of any realty or personalty.*

**WATER, SEWAGE, HEATING AND CENTRAL AIR CONDITIONING:** (Check all that apply)
Water Supply: ☒ Public ☐ Well      Hot Water: ☐ Oil ☒ Gas ☐ Elec. ☐ Other _____
Sewage Disposal: ☒ Public ☐ Septic # **BR** ___   Air Conditioning: ☐ Oil ☐ Gas ☐ Elec. ☐ Heat Pump ☒ Other **beeze**
                                                    Heating: ☐ Oil ☒ Gas ☐ Elec. ☐ Heat Pump ☐ Other _____

**3. EQUIPMENT, MAINTENANCE AND CONDITION.** The Purchaser accepts the Property in the condition as of the Contract Date except as otherwise provided herein. The Seller warrants that the existing appliances, heating, cooling, plumbing, electrical systems and equipment, and smoke and heat detectors (as required), will be in normal working order as of the possession date. The Seller will deliver the Property in substantially the same condition as on the Contract Date and broom clean with all trash and debris removed. The Purchaser and the Seller will not hold the Broker liable for any breach of this paragraph.

**4. PRICE AND FINANCING**
  A. Down Payment                                                   $ ~~280,000.00~~ 295,000  *KRB*
  B. Financing      1. First Trust                                  $ ~~280,000.00~~ 295,000  *KRB*
                    2. Second Trust                                 $ _____
                    3. Seller Held Trust - addendum attached        $ _____
       TOTAL FINANCING                                              $ ~~280,000.00~~ 295,000  *KRB*
       SALES PRICE                                                  $ ~~280,000.00~~ 295,000  *KRB*

**5. DEPOSIT.** A. The Purchaser has made a deposit ("Deposit") with **Long & Foster RE, Inc.** _____ ("Escrow Agent")
of $ **2,000.00** _____ by check and/or $ _____ by note due and payable on _____,
receipt of which is hereby acknowledged. B. The Deposit will be placed in an escrow account of the Escrow Agent after Date of Ratification to conform with the laws and regulations of the appropriate jurisdiction and/or, if VA financing applies, as required by Title 38 of the U.S. Code. This account may be interest bearing and all parties waive any claim to interest resulting from the Deposit. The Deposit will be held in escrow until: (i) Credited toward the Sales Price at Settlement; (ii) All parties have agreed in writing as to its disposition; (iii) A court of competent jurisdiction orders disbursement and all appeal periods have expired; or, (iv) Disposed of in any other manner authorized by the laws and regulations of the appropriate jurisdiction.

**6. DOWN PAYMENT.** The balance of the down payment will be paid at Settlement by certified or cashier's check or by bank wired funds.

Please Initial: Purchaser *BF* / 12/15/ Seller *RB* _____

REALTOR®
LF031
Regional Sales Contract - 1/00 K1261

E No:   E Date: _____
           ___ of ___

EQUAL HOUSING OPPORTUNITY

**7. DEED(S) OF TRUST.**
A. FIRST DEED OF TRUST. The Purchaser will ☐ OBTAIN **OR** ☐ ASSUME: a ☒ Conventional ☐ FHA ☐ VA ☐ Other _____ First Deed of Trust loan amortized over 30_____ years at a
☒ FIXED **OR** an ☐ ADJUSTABLE rate bearing (initial) interest of _____ % per year or market rate available.
Special Terms (if any): _____

B. SECOND DEED OF TRUST. The Purchaser will ☐ OBTAIN, **OR** ☐ ASSUME a Second Deed of Trust loan amortized over _____ years at a ☐ FIXED **OR** an ☐ ADJUSTABLE rate bearing (initial) interest of _____ % per year or market rate available.
Special Terms (if any): _____

C. ASSUMPTION ONLY: Assumption fees, if any, and all charges related to the assumption will be paid by the Purchaser. If the Purchaser assumes the Seller's loan, (i) The Purchaser and the Seller ☐ will, **OR** ☐ will not obtain a release of the Seller's liability to the U.S. Government for the repayment of the loan by Settlement. (ii) The Purchaser and Seller ☐ will, **OR** ☐ will not obtain substitution of the Seller's VA entitlement by Settlement. (iii) Balances of any assumed loans, secondary financing and cash down payments are approximate.                                                    *14,000 B.J.J. 12/15*

**8. ADDITIONAL FINANCING TERMS.**
A. ☒ CONVENTIONAL FINANCING. Based on the financing terms specified in this Contract, the Seller will pay $ _____ toward the Purchaser's charges, (including but not limited to loan origination fees, discount fees, buy down or subsidy fees, prepaids or other charges as allowed by the lender). The Purchaser will pay all remaining Purchaser's charges. If applicable, the Purchaser will pay at Settlement, or finance any initial private mortgage insurance.
      If the lender's appraisal is not equal to or greater than the Sales Price, the Purchaser will have the privilege and option of proceeding with consummation of this Contract without regard to the amount of the appraised valuation. The Purchaser's election to proceed with consummation of this Contract without regard to the amount of the appraised valuation will be made within 3 Days after the notification to the Purchaser of the appraised value. If the Purchaser does not make this election, it will be the Seller's option to lower the Sales Price to the appraised value and this Contract will remain in full force and effect at the lower Sales Price. If the Seller does not make this election, the parties may agree to mutually acceptable terms. Each election must be made by Notice within 3 Days after Notice from the other party. The parties will immediately sign any appropriate amendments. If the parties fail to agree, this Contract will become void.

B. ☐ VA **OR** ☐ FHA FINANCING
The Purchaser will ☐ pay at Settlement **OR** ☐ finance any VA Funding Fee or FHA initial Mortgage Insurance Premium. Based on the financing specified in this Contract, the Seller will pay $ _____ toward the Purchaser's charges (including but not limited to loan origination fees, discount fees, buydown or subsidy fees, prepaids or other charges as allowed by the lender) except that the total amount of any lender charges which cannot by law or regulation be charged to the Purchaser will be paid by the Seller. These charges, if any, will first be deducted from any Seller credit, and the remaining balance, if any, will then be applied to the Purchaser's other charges. The Purchaser will pay all remaining Purchaser's charges. If VA or FHA financing applies, it is expressly agreed that, notwithstanding any other provisions of this Contract, the Purchaser will not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the Purchaser has been given in accordance with HUD/FHA or VA requirements a written statement by the Federal Housing Commissioner or Direct Endorsement Lender/Department of Veterans Affairs or the Lender Approval Processing Program (LAPP) underwriter setting forth the appraised value of the Property (excluding closing costs) of not less than $ _____ . The Purchaser will have the privilege and option of proceeding with consummation of this Contract without regard to the amount of the appraised valuation.
THE APPRAISED VALUATION IS ARRIVED AT TO DETERMINE THE MAXIMUM MORTGAGES THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT/DEPARTMENT OF VETERANS AFFAIRS WILL INSURE/GUARANTEE. HUD/DEPARTMENT OF VETERANS AFFAIRS AND THE MORTGAGEE DOES NOT WARRANT THE VALUE NOR THE CONDITION OF THE PROPERTY. THE PURCHASER SHOULD SATISFY HIMSELF/HERSELF                    THAT                    THE                    PRICE                    AND CONDITION OF THE PROPERTY ARE ACCEPTABLE.
      If VA Financing applies, the Purchaser agrees that should the Purchaser elect to complete the purchase at an amount in excess of the reasonable value established by the Department of Veterans Affairs, the Purchaser shall pay such excess amount in cash from a source which the Purchaser agrees to disclose to the Department of Veterans Affairs, and which the Purchaser represents will not be borrowed funds except as approved by the Department of Veterans Affairs. The Purchaser's exercise of the option shall be made in writing within 3 Days of the notification to the Purchaser of the appraised value, or this Contract will become void.
      If FHA financing applies, the Purchaser's exercise of the option of proceeding with consummation of this Contract without regard to the amount of the appraised valuation shall be made in writing within 3 Days of the notification to the Purchaser of the appraised value, or this Contract will become void. The FHA loan amount may be approximate because the financed acquisition costs cannot be determined until the Settlement.

**9. LOAN APPLICATION AND APPROVAL.**
A. FINANCING APPLICATION. The Purchaser will make written application for the financing or assumption called for in this Contract ("Specified Financing") within 7 days after Date of Ratification. The Purchaser grants permission for the Selling Company and the lender to disclose to the Listing Company and the Seller general information available about the progress of the loan application and loan approval process.
B. LENDER'S APPROVAL CONTINGENCY. This Contract is contingent until 9 p.m. _____ Days after Date of Ratification ("Deadline") upon the Purchaser Delivering to the Seller a letter from the lender stating that Purchaser is approved for the Specified Financing ("Lender's Letter"). Upon Seller's receipt of the Lender's Letter, the Contract is no longer contingent on the Purchaser being approved for the Specified Financing and this Contract will remain in full force and effect. TIME IS OF THE ESSENCE.
      (i.) If the Purchaser does not Deliver the Lender's Letter by the Deadline, the lender's approval contingency will continue, unless the Seller at Seller's option gives Notice to Purchaser that this Contract will become void. If the Seller Delivers such Notice this Contract will become void at 9 p.m. on the third day following Delivery of Seller's Notice unless prior to that date and time:
            a. Purchaser Delivers to Seller the Lender's Letter; **OR**
            b. Purchaser removes this LENDER'S APPROVAL CONTINGENCY and provides Seller with evidence of sufficient funds available to complete Settlement without obtaining financing.
      (ii.) The Purchaser may substitute alternative financing for Specified Financing provided:
            a. There is no additional expense to the Seller; and
            b. The Settlement Date is not delayed.
      (iii.) If prior to satisfaction or removal of the LENDER'S APPROVAL CONTINGENCY the Purchaser receives a written rejection for the Specified Financing and Delivers a copy of the written rejection to the Seller, this Contract will become void.

Please Initial: Purchaser *B.J.J.* / *12/15* /*65* Seller *R.P.* / ____ /

E No: ____ E Date: ____
____ of ____

C. **DEFAULT.** The Purchaser will be in default if Settlement does not occur on the Settlement Date because the Purchaser:
- (i.) Fails to lock-in the interest rate(s) as specified above and the rate(s) increase so that the Purchaser no longer qualifies for such financing; **OR**
- (ii.) Applies for, and fails to obtain, alternative financing instead of the Specified Financing, unless the Seller consents in writing to the alternative financing terms, in which case the alternative financing becomes the Specified Financing; **OR**
- (iii.) Fails to comply with the lender's reasonable requirements in a timely manner; **OR**
- (iv.) Fails to immediately give Notice to the Seller or the Broker of any material adverse changes in the Purchaser's assets, liabilities or income; **OR**
- (v.) Does not have the down payment, closing fees and any other funds to settle as provided in this Contract; **OR**
- (vi.) Does or fails to do any act following the Date of Ratification that prevents the Purchaser from obtaining the financing; **OR**
- (vii.) Makes any deliberate misrepresentations, material omissions or inaccuracies in financial information that results in the Purchaser's inability to secure the financing.

10. **PURCHASER'S REPRESENTATIONS.** The Purchaser ☐ will, **OR** ☐ will not occupy the Property as the Purchaser's principal residence. Unless specified in a written contingency, neither this Contract nor the financing is dependent or contingent on the sale and settlement or lease of any other real property. The Selling Company ☒ is **OR** ☐ is not authorized to disclose to the Listing Company and Seller the appropriate financial or credit information statement provided to the Selling Company by the Purchaser. The Purchaser acknowledges that the Seller is relying upon all of the Purchaser's representations including, without limitation, the accuracy of financial or credit information given to the Seller, Broker or lender by the Purchaser.

11. **ACCESS TO PROPERTY.** The Seller will provide the Broker, the Purchaser, inspectors representing the Purchaser and representatives of lending institutions for appraisal purposes, reasonable access to the Property to comply with this Contract. The Purchaser and/or the Purchaser's representative will have the right to make an inspection prior to Settlement and/or occupancy, at which time the Seller will have all utilities in service.

12. **WELL AND SEPTIC.** If the Property is on well and/or septic systems, the ☐ Purchaser, at Purchaser's expense **OR** ☐ Seller, at Seller's expense, will furnish the Purchaser on or before settlement with a certificate dated not more than 30 days prior to Settlement from the ☐ appropriate local government authority, or ☐ a private company, indicating that: A. The well water contains no more than the acceptable level of coliform bacteria and; B. The septic system appears to be functioning satisfactorily, and if known by public records, was installed pursuant to a valid health department permit. If either system is found defective or substandard according to the certificate, the Seller will take appropriate remedial action at the Seller's expense.

13. **TERMITE INSPECTION.** The ☒ Purchaser at the Purchaser's expense **OR** the ☐ Seller at the Seller's expense, will furnish a written report from a pest control firm dated not more than ☒ 30 or ☐ 60 days prior to Settlement showing that all dwelling(s) and/or garage(s) and the Property (excluding fences or shrubs not abutting garage(s) or dwelling(s)) are free of visible evidence of active termites or other wood-destroying insects, and free from visible structural insect damage. Any extermination and structural repairs identified in the inspection report will be at the Seller's expense.

14. **REPAIRS.** If, as a condition of providing financing under this Contract, the lender requires repairs to the Property, then the Purchaser will give Notice to the Seller of the lender's required repairs. Within 5 Days after Notice, the Seller will give Notice to the Purchaser whether the Seller will make the repairs. If the Seller will not make the repairs, the Purchaser will give Notice to the Seller within 5 Days after the Seller's Notice whether the Purchaser will make the repairs. If neither the Seller nor the Purchaser will make the repairs, then this Contract will become void. This clause will not release the Seller from any responsibilities set forth in the paragraphs titled PERSONAL PROPERTY, FIXTURES AND UTILITIES; EQUIPMENT, MAINTENANCE AND CONDITION; WELL AND SEPTIC; TERMITE INSPECTION; or OTHER TERMS, or any terms specifically set forth in this Contract and any addenda.

15. **DAMAGE OR LOSS.** The risk of damage or loss to the Property by fire, act of God, or other casualty remains with the Seller until the execution and delivery of the deed of conveyance.

16. **TITLE.** The title report and survey, if required, will be ordered promptly and, if not available on the Settlement Date, then Settlement may be delayed for up to 10 business days to obtain the title report and survey after which this Contract, at the option of the Seller, may be terminated and the Deposit will be refunded in full to the Purchaser according to the terms of the DEPOSIT paragraph. Fee simple title to the Property, and everything that conveys with it, will be sold free of liens except for any loans assumed by the Purchaser. The Seller will pay any special assessments and will comply with all orders, requirements, or notices of violations of any county or local authority, condominium unit owners' association, homeowners' or property owners' association or actions in any court on account thereof, against or affecting the Property on the Settlement Date. Title is to be good and marketable, and insurable by a licensed title insurance company with no additional risk premium. Title may be subject to commonly acceptable easements, covenants, conditions and restrictions of record, if any; otherwise, the Purchaser may declare this Contract void, unless the defects are of such character that they may be remedied within 30 Days beyond the Settlement Date. In case action is required to perfect the title, such action must be taken promptly by the Seller at the Seller's expense.

The Broker is hereby expressly released from all liability for damages by reason of any defect in the title. The Seller will convey the Property by general warranty deed with English covenants of title (Virginia); general warranty deed (West Virginia); special warranty deed (D.C. and Maryland). The Seller will sign such affidavits, lien waivers, tax certifications, and other documents as may be required by the lender, title insurance company, Settlement Agent, or government authority, and authorizes the Settlement Agent to obtain pay-off or assumption information from any existing lenders.

17. **POSSESSION DATE.** Unless otherwise agreed to in writing between the Seller and the Purchaser, the Seller will give possession of the Property at the Settlement. If the Seller fails to do so and occupies the Property beyond the Settlement, the Seller will be a tenant by sufferance of the Purchaser and hereby expressly waives all notice to quit as provided by law. The Purchaser will have the right to proceed by any legal means available to obtain possession of the Property. The Seller will pay any damages and costs incurred by the Purchaser including reasonable attorney fees.

18. **SETTLEMENT.** The Seller and the Purchaser will make full settlement in accordance with the terms of this Contract ("Settlement") on, or with mutual consent before, **1/19/2006** , ("Settlement Date") except as otherwise provided in this Contract, *except that seller shall have such time as necessary to obtain any court order needed to close.*

19. **SETTLEMENT AGENT.** (Not for use in Virginia; see the Virginia Jurisdictional Addendum) The Purchaser selects **Universal Title** ("Settlement Agent ") to conduct the Settlement. Either party may retain their own counsel. The Purchaser agrees to contact the Settlement Agent within 10 Days after the Date of Ratification to schedule Settlement. The Settlement Agent will order the title exam and survey if required.

Please Initial: Purchaser _BJJ_ / _12/13/05_ Seller _KS_ ___

REALTOR®
LF031
Regional Sales Contract - 1/00 K1261

E No: ___ E Date: ___
__ of __

20. **FEES.** Fees for the preparation of the Deed, that portion of the Settlement Agent's fee billed to the Seller, costs of releasing existing encumbrances, appropriate legal fees and any other proper charges assessed to the Seller will be paid by the Seller. Fees for the title exam (except as otherwise provided) survey, recording (including those for any purchase money trusts) and that portion of the Settlement Agent's fee billed to the Purchaser, appropriate legal fees and any other proper charges assessed to the Purchaser will be paid by the Purchaser. Fees to be charged will be reasonable and customary for the jurisdiction in which the Property is located. (Recording, Transfer and Grantor's Taxes are covered in the appropriate jurisdictional addenda).

21. **BROKER'S FEE.** The Seller irrevocably instructs the Settlement Agent to pay the Broker compensation ("Broker's Fee") as set forth in the listing agreement and to disburse the compensation offered by the Listing Company to the Selling Company in writing as of the Contract Date, and the remaining amount of Broker's compensation to the Listing Company.

22. **ADJUSTMENTS.** Rents, taxes, water and sewer charges, front foot benefit and house connection charges, condominium unit owners' association, homeowners' and/or property owners' association regular periodic assessments (if any) and any other operating charges, are to be adjusted to the day of Settlement. Any heating or cooking fuels remaining in supply tank(s) at Settlement will become the property of the Purchaser. Taxes, general and special, are to be adjusted according to the certificate of taxes issued by the collector of taxes, if any, except that recorded assessments for improvements completed prior to Settlement, whether assessments have been levied or not, will be paid by the Seller or allowance made at Settlement. If a Deed of Trust is assumed, interest will be adjusted to the Settlement Date and the Purchaser will reimburse the Seller for existing escrow accounts, if any.

23. **ATTORNEY'S FEES.** In any action or proceeding involving a dispute between the Purchaser and the Seller arising out of this Contract, the prevailing party will be entitled to receive from the other party reasonable attorney's fees to be determined by the court or arbitrator(s). In the event a dispute arises resulting in the Broker being made a party to any litigation or if the Broker is required to bring litigation to collect the Broker's Fee, the Purchaser and Seller agree to indemnify the Broker, its employees, and/or licensees for all attorney fees and costs of litigation, unless the litigation results in a judgment against the Broker, its employees and/or licensees.

24. **PERFORMANCE.** Delivery of the required funds and executed documents to the Settlement Agent will constitute sufficient tender of performance. Funds from this transaction at Settlement may be used to pay off any existing liens and encumbrances, including interest, as required by lender(s) or lienholders.

25. **DEFAULT.** If the Purchaser fails to complete Settlement, at the option of the Seller, the Deposit may be forfeited as liquidated damages and not as a penalty, in which event the Purchaser will be relieved from further liability to the Seller. If the Seller does not elect to accept the Deposit as liquidated damages, the Deposit may not be the limit of the Purchaser's liability in the event of default. If the Deposit is forfeited, or if there is an award of damages by a court or a compromise agreement between the Seller and Purchaser, the Broker may accept and the Seller agrees to pay the Broker one-half of the Deposit in lieu of the Broker's Fee, (provided Broker's share of any forfeited Deposit will not exceed the amount due under the listing agreement). If the Seller fails to complete Settlement, the Purchaser will have all legal and equitable remedies, including specific performance and/or damages. If either the Seller or Purchaser refuses to execute a release of Deposit when requested to do so in writing and a court finds that they should have executed the agreement, the party who so refused to execute a release of Deposit will pay the expenses, including, without limitation, reasonable attorney's fees, incurred by the other party in the litigation. The Seller and Purchaser agree that no Escrow Agent will have any liability to any party on account of disbursement of the Deposit or on account of failure to disburse the Deposit, except only in the event of the Escrow Agent's gross negligence or willful misconduct. The parties further agree that the Escrow Agent will not be liable for the failure of any depository in which the Deposit is placed and that the Seller and Purchaser each will indemnify, defend and save harmless the Escrow Agent from any loss or expense arising out of the holding, disbursement or failure to disburse the Deposit, except in the case of the Escrow Agent's gross negligence or willful misconduct. If either the Purchaser or the Seller is in default, then in addition to all other damages, the defaulting party will immediately pay the costs incurred for the title examination, appraisal, survey and the Broker's Fee in full.

26. **OTHER DISCLOSURES. The Purchaser and Seller are advised to seek professional advice concerning the condition of the property or other legal and tax matters.** The following subparagraphs disclose some matters which the parties may wish to investigate further. These disclosures are not intended to create a contingency. Any contingency must be specified by adding appropriate terms to this Contract. The parties acknowledge the following disclosures:

A. PROPERTY CONDITION. See EQUIPMENT, MAINTENANCE AND CONDITION Paragraph. Various inspection services and home warranty insurance programs are available. The Broker is not advising the parties as to certain other issues, including without limitation: water, sewer or septic; soil condition; flood hazard areas; possible restrictions of the use of the Property due to restrictive covenants, zoning, subdivision, or environmental laws, easements or other documents; airport or aircraft noise; planned land use, roads or highways; and construction materials and/or hazardous materials, including without limitation flame retardant treated plywood (FRT), radon, urea formaldehyde foam insulation (UFFI), polybutylene pipes, synthetic stucco (EIFS), underground storage tanks, asbestos and lead-based paint. Information relating to these issues may be available from appropriate government authorities.

B. LEGAL REQUIREMENTS. All contracts for the sale of real property must be in writing to be enforceable. Upon Ratification and Delivery, this Contract becomes a legally binding agreement. Any changes must be made in writing.

C. FINANCING. Mortgage rates and associated charges vary with financial institutions and the marketplace. The Purchaser has the opportunity to select the lender and the right to negotiate terms and conditions of the financing subject to the terms of this Contract. The financing may require substantial lump sum (balloon) payments on the due dates. The Purchaser has not relied upon any representations regarding the future availability of mortgage money or interest rates for the refinancing of any such lump sum payments.

D. BROKER. The Broker may from time to time engage in the general insurance, title insurance, mortgage loan, real estate settlement, home warranty and other real estate-related businesses and services. Therefore, in addition to the Broker's Fee specified herein, the Broker may receive compensation related to other services provided in the course of this transaction. The Purchaser and Seller acknowledge that the Broker is being retained solely as a real estate agent and not as an attorney, tax advisor, lender, appraiser, surveyor, structural engineer, home inspector or other professional service provider.

27. **ASSIGNABILITY.** This Contract may not be assigned without the written consent of the Purchaser and the Seller. If the Purchaser and the Seller agree in writing to an assignment of this Contract, the original parties to this Contract remain obligated hereunder until Settlement.

28. **DEFINITIONS.** "Days" means calendar days unless otherwise specified. For the purpose of computing time periods, the first Day will be the Day following Delivery and the time period will end at 9 p.m. on the Day specified. If the Settlement Date falls on a Saturday, Sunday, or legal holiday, then the Settlement will be on the prior business day. "Date of Ratification" means the date of final acceptance in writing of all the terms of this Contract (not the date of expiration or removal of any contingencies). "Delivery" means hand-carried, sent by overnight delivery service, by facsimile transmission as provided for in the NOTICES Paragraph, or when receipt is acknowledged in writing. In the case of overnight delivery service, Delivery will be deemed to have been made on the Day following the sending. The masculine includes the feminine and the singular includes the plural.

Please Initial: Purchaser _BJJ_ _12/15/05_ Seller _RB_

*and Seller shall have all available remedies
including specific performance and damages.
_TRB_

REALTOR®
LF031
Regional Sales Contract - 1/00 K1261

E No: _____ E Date: _____
_____ of _____

EQUAL HOUSING OPPORTUNITY

29. **NOTICES.** All notices ("Notice") required to be given by this Contract will be in writing and will be effective as of the date on which such Notice is delivered:
A. Addressed to the Seller at: **Betty Gee of L & F, 20 Chevy Chase Cir NW, DC  20015** _____ OR
transmitted by facsimile to   **(202) 364-0222** _____ ;
B. Addressed to the Purchaser at:   **Betty Gee of L & F, 20 Chevy Chase Cir., NW, DC 20015** _____ OR
transmitted by facsimile to   **(202) 364-0222** _____

30. **MISCELLANEOUS.** This Contract may be signed in one or more counterparts, each of which is deemed to be an original, and all of which will together constitute one and the same instrument. Documents obtained via facsimile machines will also be considered as originals. Typewritten or handwritten provisions included in this Contract will control all pre-printed provisions that are in conflict.

31. **VOID CONTRACT.** If the Contract becomes void, both parties will immediately execute a release directing that the Deposit will be refunded in full to the Purchaser according to the terms of the DEPOSIT paragraph.

32. **ADDITIONS.** The appropriate **JURISDICTIONAL ADDENDUM** and **LEAD BASED PAINT ADDENDA (if applicable)** must be attached and made a part of this Contract. The following are made a part of this Contract:

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ Yes | | STATE JURISDICTIONAL ADDENDUM | ☒ DC | ☐ VA | ☐ MD | ☐ WVA | ☐ Other |

☒ Yes  ☑ No  HOME INSPECTION ADDENDUM                ☒ Yes  ☐ No    LEAD- BASED PAINT DISCLOSURE FORM
☐ Yes  ☑ No  RADON TESTING ADDENDUM                  ☐ Yes  ☑ No    LEAD- BASED PAINT INSPECTION CONTINGENCY
☐ Yes  ☑ No  SALE OF HOME CONTINGENCY                ☐ Yes  ☑ No    FHA HOME INSPECTION NOTICE
☐ Yes  ☑ No  CONDO/COOP ADDENDUM (DC and MD)
☐ Yes  ☑ No  HOME WARRANTY POLICY paid for by:    ☐  Purchaser or  ☐  Seller.  Cost not to exceed $ _____
             Warranty provider to be _____
☐ Yes  ☑ No  OTHER (specify): _____

33. **OTHER TERMS.** _____
_____
_____

34. **ENTIRE AGREEMENT.** This Contract will be binding upon the parties, and each of their respective heirs, executors, administrators, successors and permitted assigns. The provisions hereof will survive the delivery of the deed and will not be merged therein. This Contract, unless amended in writing, contains the final and entire agreement of the parties and the parties will not be bound by any terms, conditions, oral statements, warranties or representations not herein contained. The interpretation of this Contract will be governed by the laws of the appropriate jurisdiction.

SELLER:                                                      PURCHASER:

_12/26/05_  _Robert Bunn, com_ __(SEAL)   _12/15/05_  _Benjamin T. Twntroy_ ___(SEAL)
Date        Signature                                  Date         Signature
      _secretary for Emma Cunningham_

___/___  _____(SEAL)   ___/___  _____(SEAL)
Date        Signature                                  Date         Signature

**Date Ratification (see DEFINITIONS PARAGRAPH)** _____.

************************************************************************************

**For information purposes only:**

Listing Company's Name and Address:                    Selling Company's Name and Address:
**Long & Foster Real Estate, Inc.  Chevy Chase Sales**  **Long & Foster Real Estate, Inc.  Chevy Chase Sales**
**20 Chevy Chase Circle, NW**                          **20 Chevy Chase Circle**
**Washington, DC  20015**                              **Washington, DC  20015-2979**
Office #  **(202) 363-9700**    FAX #  **(202) 364-0222**   Office #  **(202) 363-9700**    FAX #  **(202) 364-0222**
MRIS Broker Code: _____    MRIS Office ID: _____      MRIS Broker Code: _____    MRIS Office ID: _____
Agent Name  **Betty  Gee**                              Agent Name  **Betty  Gee**
Agent MRIS ID# _____                                  Agent MRIS ID# _____
Agent Email Address _____                              Agent Email Address _____
Broker Code:  **LNG3**                                  Broker Code: _____

©2000. This is a suggested form owned by certain REALTOR® Associations ("Association"). This form has been created and printed exclusively for the use of REALTORS® and members of the Associations, who may copy or otherwise reproduce this form in identical form with the addition of their company logo and with any other changes being set forth in a clearly marked separate addendum. Any other use of this form by REALTORS® and members of the Associations, or any use of this form whatsoever by non members of the Associations, is prohibited without prior written authorized consent of the Associations.



LF031
Regional Sales Contract - 1/00 K1261
E No:  E Date: _____
___ of ___

**LONG & FOSTER**
REALTORS®

Executive Offices
11351 Random Hills Road
Fairfax, VA 22030
(703) 359-1500

**BUYER HOME WARRANTY DISCLOSURE**

Office: Chevy Chase Sales

Address: 20 Chevy Chase Circle
Washington  DC 20015-2979

Phone #: (202) 363-9700

Property Address:    911 Evarts Street, NE
_____
(Street)
Washington DC 20018
_____
(City/State/Zip)                              _____
                                                      (County)

### Buying a Home with a Home Warranty

A Home Warranty is a residential service agreement that provides for the repair or replacement of a home's covered mechanical systems and major appliances that break down due to normal wear and tear. Depending on the terms of the particular agreement, Home Warranty coverage may be in effect for a full year after settlement.

Having a Home Warranty in place may reduce the likelihood of incurring unexpected and often costly repair bills on covered systems and appliances in your new home.

**Typical components a Home Warranty could cover (depending on warranty provider) may include:**

| | | |
|---|---|---|
| ? Air Conditioning | ? Central Vacuum | ? Dishwasher (built-in) |
| ? Door Bell Chimes | ? Electrical Systems | ? Faucets |
| ? Garbage Disposal | ? Garage Door Opener | ? Heat |
| ? Hot Water Heater | ? Microwave (built-in) | ? Oven/Range |
| ? Ceiling Fans | ? Plumbing System | ? Refrigerator |
| ? Trash Compactor | ? Washer/Dryer | ? Water Softener |

Long & Foster encourages its buyers to obtain a Home Warranty and to that end, we can make available various brochures and product descriptions for you to review so that you can make an informed decision regarding Home Warranty coverage.

After having read the foregoing, we hereby acknowledge that a Long & Foster sales associate has made available to us certain information concerning Home Warranty Programs. We understand that we may choose to accept or decline any or all of the programs presented to us.

☐ I am interested in Home Warranty coverage          ☑ Decline Home Warranty

_____          _____
Buyer                                                                      Date  12/15/05

_____          _____
Buyer                                                                      Date

_____          _____
Buyer                                                                      Date


REALTOR®


EQUAL HOUSING OPPORTUNITY

E No:    E Date:
____ of ___



**Washington, DC Jurisdictional Addendum**
(REQUIRED NOTICE AND DISCLOSURE ADDENDUM FOR USE WITH THE REGIONAL CONTRACT)
**Greater Capital Area Association of REALTORS®, Inc.**

The Contract of Sale dated __12/15/2005__ , Address __911 Evarts Street, NE__
City __Washington__ , State __DC__ Zip __20018__ Lot: __13__
Block/Square: __3843__ Unit: _____ Tax ID # __3843//0013__
Parking Space(s) # _____ Storage Unit(s) # _____ Subdivision/Project: __Brookland__
between Seller __Robert Bunn, Conservator  for Emma Cunningham ,__ _____ and
Buyer __Benjamin F Fantroy, Sr. ,__ _____ is hereby
amended by the Incorporation of this Addendum, which shall supersede any provisions to the contrary in the Contract.

**1. LEAD - BASED PAINT HAZARD.** A Seller who fails to give the required Lead-Based Paint Disclosure Form and Pamphlet may be liable under the Act for three times the amount of damages. The Seller represents that residential Property ☒ was built prior to 1978 OR ☐ was not built prior to 1978 OR ☐ building date is uncertain.
If the dwelling(s) was built prior to 1978 or if the building date is uncertain, this Contract is not complete and not ratified unless it includes, and the Seller and Buyer both accept the Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards, whereby the Buyer acknowledges receipt of required Lead Paint Information and has either taken the opportunity to incorporate a Lead-Based Paint Inspection contingency or waived such a right. The Seller and any agent involved in the transaction are required to retain a copy of the completed Lead-Based Paint Disclosure form for a period of 3 years following the date of settlement. The Seller and Buyer acknowledge by their respective initials below that they have read and understand the provisions of this paragraph.

_____ / _____ Seller's Initials          _____ 1/2/15/05 Buyer's Initials

**2. SELLER DISCLOSURE.** Buyer acknowledges receipt of the Seller's Disclosure Statement pursuant to D.C. Code 45-951 prior to the submission of the offer ☒ Yes ☐ No.

_____ 1/2/15/05 Buyer's Initials

**3. RECORDATION AND TRANSFER TAXES.** The D.C. Recordation Tax will be paid by the Buyer and the D.C. Transfer Tax will be paid by the Seller.

**4. D.C. SOIL DISCLOSURE REQUIREMENTS.** The characteristic of the soil on the subject Property as described by the Soil Conservation Service of the United States Department of Agriculture in the Soil Survey of the District of Columbia published in 1976 and as shown on the Soil Maps of the District of Columbia at the back of that publication is __Urban Land Sassafra Chillum__
For further information, the Buyer can contact a soil testing laboratory, the District of Columbia Department of Environmental Services, or the Soil Conservation Service of the Department of Agriculture.

5. **TENANCY.** Seller represents that property ☐ is ☒ is not subject to an existing residential lease or tenancy.
   a. If the Property is tenant occupied, Buyer hereby certifies that Buyer ☐will ☐will not occupy the Property.

   b. The Property is sold and shall be conveyed free of existing tenancy except as follows:

   _____
   (hereinafter the "Tenant(s)"). Without the prior written consent of Buyer (which shall not be unreasonably withheld), Seller shall not modify the terms of or terminate such tenancy, except for non-payment or rent or enter into any new leases or tenancies with respect to the Property. Seller represents to Buyer and Agents that on _____ (date) Seller has provided to the Tenant(s) a written notice of the intended sale of the Property and a bona fide offer of sale or will provide same pursuant to the following paragraph. Seller and Buyer further acknowledge that, in addition to the rights under the bona fide offer of sale, the Tenant(s) has an additional fifteen (15) day right of first refusal to purchase the Property during the period specified by District of Columbia law and regulations.



©2005, The Greater Capital Area Association of REALTORS ®, Inc.
This recommended form is the property of the Greater Capital Area Association of REALTORS ®, Inc. and is for use by members only.
Previous editions of this form should be destroyed.



Seller further represents and agrees that within two (2) days after final ratification of this Contract Seller will hand-deliver to the Tenant(s) and send by first-class mail the notice of right of first refusal required by District of Columbia law and regulations and a copy of this Contract. In the event that prior to the date of this Contract Seller has not provided to the Tenant(s) a written notice of the intended sale of the Property and a bona fide offer of sale, Seller represents and agrees that within two (2) days after final ratification of this Contract Seller will hand-deliver and send by first class mail to the Tenant(s) a written notice of the intended sale of the Property, a bona fide offer of sale, the required notice of right of first refusal and a copy of this Contract. Upon or after execution of a Contract of sale of the Property between Seller and the Tenant(s), at the option of Buyer (exercisable by written notice to Seller) this Contract shall be void and the deposit hereunder shall be returned to Buyer. If, however, the Tenant(s) shall fail to exercise the foregoing rights to purchase the Property or shall execute and deliver a valid rejection of said rights, then this Contract shall remain in full force and effect. The Seller shall keep Buyer and the Agents apprised of all negotiations, correspondence, Contracts and other developments with respect to negotiations with the Tenant(s).  All actions required hereunder to be taken by Seller shall be taken in accordance with District of Columbia law and regulations.

---

**6. UNDERGROUND STORAGE TANK DISCLOSURE. (Applicable to single family sales only.)**
In accordance with the requirements of Section 3(g) of the District of Columbia Underground Storage Tank Management Act of 1990 (D.C. Code Section 6-995.2), as amended by the District of Columbia Underground Storage Tank Management Act of 1990 Amendment Act of 1992 (the "Act") and the regulations adopted thereunder by the District of Columbia (the "Regulations"), Seller hereby informs Buyer that Seller has no knowledge of the existence or removal during Seller's ownership of the Property of any underground storage tanks as that term is defined in the Act and the Regulations, except as follows _____

I hereby certify that I have received and read a copy of the disclosure notice in this paragraph prior to signing this Contract

Buyer: _Benjamin F. Hantry_ _____

---

**7. FOREIGN INVESTMENT TAXES-FIRPTA:** Section 1445 of the United States Internal Revenue Code of 1986 provides that a buyer of a residential real property located in the United States must withhold federal income taxes from the payment of the purchase price if (a) the purchase price exceeds $300,000.00 or the purchase price is less than or equal to $300,000.00 and the property will not be owner occupied and (b) Seller is a foreign person for purposes of U.S. income taxation (foreign person). A foreign person includes, but is not limited to, a non-resident alien, foreign corporation, foreign partnership, foreign trust or foreign estate (as those terms are defined by the Internal Revenue Code and applicable regulations). Seller represents that Seller is not a foreign person and agrees to execute an affidavit to this effect at the time of settlement.

**8. CONDOMINIUM/COOPERATIVE/HOMEOWNERS ASSOCIATION:** Seller represents that this property  ☐ is ☒ is not subject to a condominium, cooperative or homeowners association that is entitled to assess a mandatory fee. The current fee is _____ per _____ .

**9. NOTICES.** All notices under the contract shall be in writing. Notices to the Seller shall be effective when delivered to the Seller or an Agent of the Seller named in the contract (including a Dual Agent, Intra-Company Agent, or Designated Representative assigned to the Seller, as applicable, or alternatively, to the Agent's Supervising Manager.) Notices to the Buyer shall be effective when delivered to the Buyer or an Agent of the Buyer named in the contract (including a Dual Agent, Intra-Company Agent, or Designated Representative assigned to the Buyer, as applicable, or alternatively, to the Agent's Supervising Manager).  "Purchaser" means "Buyer" and vice versa. "Delivery" means hand carried, sent by overnight delivery service, sent by wired or electronic medium which produces a tangible record of the transmission (such as telegram, mailgram, telecopier or "Fax", email which includes an attachment with an actual copy of the executed instruments being transmitted, or U.S. Postal mailing.)  In the event of overnight delivery service, Delivery will be deemed to have been made on the next business Day (Monday through Friday-excluding federal holidays) following the sending, unless earlier receipt is acknowledged in writing. In the event of U.S. Postal mailing, Delivery will be deemed to have been made on the third business Day (Monday through Saturday, excluding federal holidays) following the mailing, unless earlier receipt is acknowledged in writing. "Day" or "Days" means calendar days unless otherwise specified. For the purpose of computing time periods, the first Day will be the Day following Delivery, and the time period will end at 9 p.m. on the Day specified.  The provisions of this paragraph regarding delivery of notices shall also be applicable to delivery of resale packages for condominiums, cooperatives and/or homeowners associations as may be required in a separate addendum.

_Robert Berry, Conservator_ 11/26/05    _Benjamin F. Hantry_ 12/15/05
Seller              Date          Buyer              Date

_____    _____
Seller              Date          Buyer              Date

©2005, The Greater Capital Area Association of REALTORS ®, Inc.
This recommended form is the property of the Greater Capital Area Association of REALTORS ®, Inc. and is for use by members only.
Previous editions of this form should be destroyed.



**Greater Capital Area Association of REALTORS®, Inc.**
**Some Information Relative to the Purchase of Real Estate**
For Use in Montgomery County and the District of Columbia

**This information is to assist Buyers in the purchase of residential real property. The contents are not all-inclusive and are provided for informational purposes only.**

1.  **Legal Requirements:** All contracts for real property are required to be in writing to be legally enforceable. There is a "Maryland Association of Realtors (tm) Residential Contract of Sale" (MAR) for use in Maryland or the "Regional Sales Contract" (Regional) for use in Maryland and the District of Columbia. Appropriate jurisdictional addenda are required with each contract. Buyers have the right to have legal counsel review these forms. All written offers are to be presented to the Seller.

2.  **Agency Relationships:** Buyers must be provided a written disclosure about agency relationships on forms specified by the State of Maryland and/or the District of Columbia, as applicable. If Buyers desire to have an agent represent them, they must have a written Buyer agency agreement.

3.  **Fair Housing:** In compliance with federal fair housing regulations, properties shall be made available to all persons without regard to race, color, religion, national origin, sex, handicap and familial status. The District of Columbia recognizes age, marital status, physical handicap, sexual orientation, family responsibilities, matriculation, and political affiliation, source of income, place of residence or business and personal appearance as protected classes in addition to the federal protected classes. Maryland recognizes marital status, physical/mental handicap, and sexual orientation as protected classes in addition to the federal protected classes. In Montgomery County, protected classes in addition to those of federal and the State of Maryland include source of income, age and ancestry.

4.  **Land Use:** Land uses may be restricted on some properties by covenants, easements, zoning, subdivision regulations, historic preservation regulations, environmental laws, airport noise, planned land uses, road or highway rights of way, federal, state, county and/or local or municipal restrictions or statutes, or other regulations. Information may be procured through government agencies and a title search for recorded land use restrictions prior to making an offer to ascertain how such restrictions may impact use of the property.

5.  **Property Taxes:** The property's assessment may not reflect its current market value. Thus the adjusted taxes could be raised after a sale. Contact any of the following local authorities: Maryland State Department of Assessments and Taxation (SDAT), Montgomery County Department of Finance, and in the District of Columbia, the Department of Assessments and Taxation to determine the likelihood of an adjustment or possible/potential eligibility for discounted property taxes through one or more special programs.

6.  **Inspections:** Buyers may include in their purchase offer the right to employ a professional engineer, home inspection specialist, environmental firm or other expert(s) of their choice to inspect the property for possible hazardous substances, building material concerns and defects. Hazardous substances and building materials of concern may include, but are not limited to, asbestos, cleaning chemicals, indoor pollutants, lawn and garden chemicals, lead, mold spores, paint, radon, radium, fire retardant treated plywood (FRT), polybutelene pipes, and synthetic stucco (EIFS). Other factors may include contaminated ground water, nearby landfills and other disposal sites, industrial sites, and noxious air or aircraft over flight noise. Agents do not have the technical expertise to advise Buyers of the presence of such factors, or whether or not they pose a problem. Buyers can obtain information from a home inspection specialist, environmental specialists, the U.S. Environmental Protection Agency, the Maryland department of the Environment, U.S. Army Corps of Engineers, Maryland – National Capital Park and Planning Commission, District of Columbia Department of the Environment and other governmental agencies.

©2004, The Greater Capital Area Association of REALTORS ®, Inc.
This recommended form is the property of the Greater Capital Area Association of REALTORS ®, Inc. and is for use by members only.
Previous editions of this form should be destroyed.

REALTOR®

E No:   E Date:
___ of ___

EQUAL HOUSING
OPPORTUNITY

7.  **Mold:** The Listing Broker may list properties and the Selling Broker may show properties that contain mold. Molds are a type of fungus, some of which may potentially cause harm to humans. The Brokers are not experts with regard to mold or the health effects of mold exposure. Accordingly, if the Buyer has a concern, it is the responsibility of the Buyer to retain appropriate professionals to inspect property that the Buyer may purchase to determine the presence of any mold.

8.  **Financing:** Mortgage rates and fees vary with financial institutions and fluctuations in the market. Buyers have the right to select the lender and right to negotiate the terms of their financing and the conditions of their loan. Consult lenders or visit the following web sites for first time home buyer and other special programs, www.montgomerycountymd.gov or www.dc.gov in the District of Columbia.

9.  **Warranty:** a number of companies provide home warranties/service contracts on systems, appliances, etc., which are available. Agents can provide information on companies that provide such service.

10.  **Homeowner's Insurance:** Homeowner insurance rates and availability are determined in part by the number and nature of claims and inquiries made on a property's policy as well as the number and nature of claims made by a prospective Buyer. Buyer should consult insurance carriers as soon as possible.

## SPECIFIC TO DISTRICT OF COLUMBIA

11.  **Property Condition Disclosure:** With limited exceptions, Sellers are required by law to provide Buyers with a standard property condition disclosure prior to or at the time of ratification of a sales contract. Should such disclosure not be provided, the Buyer shall have the right to void said contract. The disclosure is not a substitute for an inspection by an engineer, home inspection specialist or environmental firm, and Buyers may wish to obtain such an inspection. Note that even without such disclosure the Seller is obligated to disclose known material defects.

12.  **Homeowner's Associations, Condominiums, Cooperatives Disclosure:** In the case of a condominium unit resale, the Seller must provide the Buyer with the Condominium Instruments and Certificate ("information package") on or prior to the tenth business day following ratification of the Contract. The Buyer is entitled to a mandatory review period of three business days following receipt of the information package, during which time the Buyer will have the right to void the contract. Should the Seller fail to deliver the Instruments and Certificate to the Buyer within ten business days of ratification, the Buyer shall have the option to void the contract at anytime thereafter until the time of settlement but no later than 3 business days following actual receipt of the information package as outlined above. This right cannot be waived.

If a property is part of a cooperative or a development which has the right to impose a mandatory fee, the Buyer can request the Seller, as part of the contract, to provide relevant information. Such information may include, but is not limited to, the specific fees involved as well as a package of covenants, restrictions, bylaws and financial information.

13.  **Tenancy Rights:** If a property is tenant occupied, the tenants qualify under the Tenant Opportunity to Purchase Act to match a bona fide offer by a third party. It is important to understand the complexities of a tenant occupied sale prior to making an offer.

14.  **Transfer and Recordation Fees:** The DC Recordation Tax is the responsibility of the Buyer and DC Transfer Tax is the responsibility of the Seller, unless otherwise negotiated in the sales contract.

## SPECIFIC TO MONTGOMERY COUNTY

15.  **Government Regulations Disclosure:** Sellers are required to disclose to the best of their knowledge specific facts relevant to, or affecting any property, whether imposed by law or regulation or any common law principle. Completed and signed "Government Regulations, Easements and Assessments Disclosure and Addendum" shall be available prior to making a purchase offer and is required to be part of the sales contract.

©2004, The Greater Capital Area Association of REALTORS ®, Inc.
This recommended form is the property of the Greater Capital Area Association of REALTORS ®, Inc. and is for use by members only.
Previous editions of this form should be destroyed.



REALTOR®
GCAAR Form # 1318 – Some Information
LF098   10/2004

E No:  E Date:
____ of ____

**16.  Property Condition Disclosure/Disclaimer:** Buyers are entitled, with limited exceptions, to receive the completed Maryland Residential Property Disclosure or Disclaimer Statement. The Seller has the option whether to disclose or disclaim. The disclosure portion of the form requires the Seller to provide information, of which the Seller has actual knowledge regarding the condition and age of various systems and the structure, and information about factors which impact the property. A Seller's execution of the disclaimer portion of the form does not mean the sale is "as is." The Disclosure/Disclaimer form states that the property conveys "as is" except as provided in the sales contract. The Disclosure is not a substitute for an inspection.

**17.  Land Use Plans:** Properties may have special restrictions on land uses and physical changes. Buyers may review the County master plan, adopted amendments, and approved official maps showing planned land uses, roads, and highways, parks and other public facilities and any applicable municipal plan to understand how recorded covenants, easements, zoning, subdivision regulations, County historic preservation regulations, environmental laws, planned land uses, road or highway right of ways, local restrictions, statutes, or other regulations affect a particular property. County master plans can be viewed at the Maryland-National Capital Park and Planning commission, 8787 Georgia Avenue, Silver Spring, MD 20910. Local/municipal plans are available at the municipal offices. For a list of municipalities, their telephone numbers and web sites, go to the Resources link on www.gcaar.com or to www.montgomerycountymd.gov.

**18.  Transfer and Recordation Fees:** Maryland law requires that, unless otherwise negotiated in the sales contract, the cost of any recordation tax or State and County transfer tax shall be shared equally between Buyer and Seller. In the event the Buyer is a First Time Maryland Owner Occupant Home Buyer, the law waives the Buyer's portion of the State transfer tax.

**19.  Homeowner's Associations, Condominiums, Cooperatives and Developments with Restrictions:** If a property is part of a condominium, cooperative or a development which has rights, such as but not limited to, the right to impose a mandatory fee, the Buyer will be provided a package of covenants, restrictions, by laws and financial information as well as a mandatory review period.

I/we acknowledge receipt of this notice from     **Betty  Gee** _____ (Agent) affiliated

With     **Long & Foster Real Estate, Inc.** _____ (Broker)     Phones(s):     __**(202) 363-9700**__ _____

**Benjamin F Fantroy, Sr.** _____     _____
Buyer (printed name)                                           Date     Buyer (printed name)                              Date

*Benjamin J. Fantroy* /12/15/05
Signature                                                      Signature

©2004, The Greater Capital Area Association of REALTORS ®, Inc.
This recommended form is the property of the Greater Capital Area Association of REALTORS ®, Inc. and is for use by members only.
Previous editions of this form should be destroyed.

REALTOR®
GCAAR Form # 1318 – Some Information                         3 of 3                    E No:   E Date:
LF098   10/2004                                                                         ___ of ___

EQUAL HOUSING OPPORTUNITY



**AFFILIATED BUSINESS ARRANGEMENT**
**DISCLOSURE STATEMENT**

For Agent Use:
Agent Name: _____
First              Last
Office Name: _____

Please Check One:    ☐ Buyer    ☐ Seller

To (Client's Name):  **Benjamin F Fantroy, Sr. , ___ ,**_____    Email: _____
Client Phone Number(s): Home: _____    Work: _____    Cell: _____
Property Address:
(Street)    **911 Evarts Street, NE**_____ (City) **Washington**_____ (State) **DC**__ (Zip) **20018**

From:    Long & Foster Real Estate, Inc._____    MLS #: _____    Property Type (check one):

☐ Single-Family    ☐ Townhouse    ☐ Condo
☐ Multi-Family    ☐ Lot / Land    ☐ Co-op

In connection with the sale and purchase of this property, you may need to obtain certain settlement services Long & Foster has an affiliated business relationship with the following mortgage, title, closing, and insurance service providers:

For mortgage financing:
    **Prosperity Mortgage Company**

To close your loan and/or for title insurance:

| | |
|---|---|
| **Bon Air Title Agency, Inc.** | (Richmond Region) |
| **Brennan Title Company** | (Virginia, Maryland, DC and Delaware) |
| **The Fountainhead Title Group Corporation** | (Virginia, Maryland, DC, Delaware and Pennsylvania) |
| **Homestead Settlement Services, LLC** | (SW Virginia) |
| **Long & Foster Closing Services, LLC** | (Pennsylvania) |
| **Long & Foster Harbor Title Agency, LLC** | (Hampton Roads Region) |
| **Long & Foster Settlement Services, LLC** | (Philadelphia / NJ) |
| **MBH Settlement Group, LC** | (Virginia) |
| **RGS Title, LLC** | (Virginia, Maryland, DC and Delaware) |
| **Southern Title of Roanoke, LLC** | (SW Virginia) |
| **Southern Title of Botetourt, LLC** | (SW Virginia) |
| **Trump & Trump, LC** | (West Virginia) |
| **Universal Title, LLC (DBA UT Settlements in Virginia)** | (Virginia, Maryland and DC) |

For insurance, including property and hazard:
    **Long & Foster Insurance Agency, Inc.**

This is to give you notice that Long & Foster Real Estate, Inc., has a business relationship with each of the settlement service providers identified above. Long & Foster Real Estate, Inc., Prosperity Mortgage Corporation, Mid-States Title Insurance Agency, Inc. and Long & Foster Insurance Agency, Inc. are owned by a common parent, Long & Foster Companies, Inc.  Prosperity Mortgage Corporation owns a one-half interest in a joint venture mortgage banking company, Prosperity Mortgage Company. Mid-States Title Insurance Agency, Inc. jointly owns Assurance Title, LLC with The Fountainhead Title Group Corporation; Bon Air/Long & Foster Title Agency, LLC with Bon Air Title Agency, Inc.; Eastern Title, LLC with MBH Settlement Group, LC; Long & Foster Harbor Title Agency, LLC with Harbor Associates, LLC; Long & Foster Settlement Services, LLC with American Abstract Agency, Inc; Mid-States Title Company-Maryland, LLC with Universal Title, LLC (DBA UT Settlements in Virginia); Mid-States Title Company-Virginia, LLC with RGS Title, LLC;  Positive Title, LLC with Brennan Title Company; Long & Foster of West Virginia Title Insurance Agency, LLC with Trump & Trump, LC; Mid-States Title of Roanoke, LLC, Title Services of New River Valley, LLC, and Lawyers Title Real Estate Services, Inc., with Homestead Settlement Services, LLC; Long & Foster Closing Services, LLC with Settlement America, LLC; STR/STA-1, LLC, STR/STA-2, LLC, STB/North Title Agency, LLC, STB/NTA-1, LLC, STB/NTA-2, LLC, Fincastle Title Agency, LLC, Southern Title of Botetourt, LLC, Southern Title of Roanoke, LLC and Southern Title Settlement Company  with Glasgow Enterprise Corp. and Jolly, Place, Fralin & Prillaman, PC.

Set forth below are estimated charges or a range of charges for the settlement services listed.  You are **NOT** required to use the listed providers as a condition for purchase of the subject property.  **THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.**

**LENDER CHARGES**

PROSPERITY MORTGAGE COMPANY charges fees which may include discount points and an origination fee (which accompany the interest rate you choose and which are listed as percentages of the loan amount).

Discount Points:    0% - 4%       Origination Fee:    0% - 1%



REALTOR®
8/05
LF172-1



EQUAL HOUSING OPPORTUNITY

E No: _____    E Date:
_____    of _____

Amounts required for special credit reports such as business credit reports or for appraisals of larger properties are collected when the work is done. Any of these fees collected prior to your loan's closing are allowed by law if required by an outside credit reporting agency or real estate appraiser chosen to represent the lender's interest. Set forth below is the estimated charge or range of charges for the settlement services of a credit reporting agency and real estate appraiser that Prosperity will require you to use, as a condition of your loan on this property, to represent Prosperity's interests in the transaction. If the undersigned make(s) use of Prosperity Mortgage Company, then you acknowledge and consent that Long & Foster Real Estate, Inc. may receive a financial or other benefit as a result of this referral.

Credit Report:   $60          Appraisal:   $375-$850 (if property value is over $2M, ask for quote)

## TITLE INSURANCE CHARGES

Estimated owners' title insurance premiums (per $1,000 of sales price):

| Virginia | |
|---|---|
| First $100,000 | $4.90 |
| $100,000-$500,000 | $4.40 |
| $500,000-$1,000,000 | $3.75 |
| Over $1,000,000 | Ask for quote |

Simultaneous issue of Lenders' Policy (VA) is $100.00.
Title Insurance commitment fee per owner/lender policy
will not exceed $125.00.

| West Virginia | |
|---|---|
| First $100,000 | $4.76 |
| $100,000-$500,000 | $4.08 |
| $500,000-$5,000,000 | $3.60 |

Simultaneous issue of Lenders' Policy (WV) is $50.00.
Title Insurance commitment fee per owner/lender
Policy is $50.00.

| Pennsylvania | |
|---|---|
| First $30,000 | $16.10 |
| $30,000-$45,000 | $8.34 |
| $45,000-$100,000 | $6.90 |
| $100,000-$500,000 | $5.75 |
| $500,000-$1,000,000 | $4.31 |

Lender required endorsements (PA) approx. $150.00.

| Maryland | |
|---|---|
| First $250,000 | $4.20 |
| $250,000-$500,000 | $3.60 |
| $500,000-$750,000 | $3.30 |
| $750,000-$1,000,000 | $3.00 |

| District of Columbia | |
|---|---|
| First $250,000 | $5.70 |
| $250,000-$500,000 | $5.10 |
| $500,000-$1,000,000 | $4.50 |

Simultaneous issue of Lenders' Policy (MD and DC) is $35.00.
Title insurance commitment fee per owner/lender policy will not exceed $75.00.

| Delaware | |
|---|---|
| First $100,000 | $4.20 |
| $100,000-$1,000,000 | $3.60 |
| $1,000,000-$5,000,000 | $3.00 |

Simultaneous issue of Lenders' Policy (DE) is $25.00.
Title insurance commitment fee per owner/lender
policy will not exceed $75.00.

| New Jersey | |
|---|---|
| First $100,000 | $6.30 |
| $100,000-$500,000 | $4.80 |
| $500,000-$2,000,000 | $3.30 |
| Over $2,000,000 | $2.40 |

Simultaneous issue of Lenders' Policy (NJ) is $25.00.
Lender required endorsements are $25.00 each.
Miscellaneous charges are approx. $125.00. Out of pocket costs are approx. $170.00.

## INSURANCE CHARGES

LONG & FOSTER INSURANCE AGENCY, INC. is an insurance agency representing many different insurers. The only cost is the insurance policy coverage chosen by you.

Homeowner Insurance premium          $300-$1,600+ per year

## HOME WARRANTY DISCLOSURE

No Long & Foster affiliated company has an ownership interest in any company offering home warranty insurance; however, when a Seller or Purchaser purchases a home warranty insurance policy through a Long & Foster sales associate, Long & Foster Real Estate, Inc. receives a maximum of $90.00 of the premium paid for services performed in the placement of the warranty.

## ACKNOWLEDGEMENT

I/we have read this disclosure form, and understand that Long & Foster Real Estate, Inc. is referring me/us to purchase the above-described settlement service(s) and may receive a financial or other benefit as a result of this referral.

_Benjamin J Fanting_  _12/15/05_          _____  /  _____
Signature          Date          Signature          Date

**Greater Capital Area Association of REALTORS®, Inc.**

## Addendum of Clauses

**FOR USE WITH EITHER THE MARYLAND ASSOCIATION OF REALTORS® (MAR) RESIDENTIAL CONTRACT OF SALE
OR THE REGIONAL SALES CONTRACT**

The contract of sale dated   **12/15/2005**              Address   **911 Evarts Street, NE**

City  **Washington**                          , State   **DC**                    Zip   **20018**        between

Seller   **Robert Bunn, Conservator  for Emma Cunningham ,**                                                          and

Purchaser   **Benjamin F Fantroy, Sr. ,**

is hereby amended by the incorporation of this Addendum, which shall supersede any provision to the contrary of this Contract.

**It is expressly provided that only the numbered paragraphs which are checked and initialed by all Parties shall be made a part of said contract. TIME IS OF THE ESSENCE WITH REGARD TO EACH PROVISION OF THIS ADDENDUM WHICH CONTAINS TIMEFRAMES.**

☐     1.  **HOME INSPECTION CONTINGENCY.** This Contract is contingent until 9 p.m. on the _____Day after the Date of Ratification ("Deadline") for inspections of the property, not including radon or lead-based paint inspections, which require separate contingencies,  by the Buyer, a home inspection firm and/or other representative(s) at the Buyer's discretion and expense.
The Seller will have all utilities in service at the time of inspection(s). This contingency will terminate at the Deadline unless by the Deadline the Buyer Delivers to the Seller either **A** or **B:**
**A.** A copy of the report(s) from the inspection(s) of the property together with a Home Inspection Notice (see GCAAR Home Inspection Notice) listing home inspection conditions or items that the Buyer requires the Seller to repair, and/or stipulating a dollar credit, as allowed by the lender, to be paid at settlement by the Seller toward the Purchaser's charges to buy the property.

If the Seller elects not to perform in accordance with the Home Inspection Notice or makes another offer, the Seller will Deliver notice to the Purchaser of such decision within 3 Days after Delivery of the Home Inspection Notice.

Within 3 Days after Delivery of a notice from the other party, either party may:

   (i)   Deliver notice accepting the terms contained in the other party's notice; or
   (ii)  Deliver notice continuing negotiations by making another offer; or
   (iii) Deliver notice that this Contract will become void at 9 p.m. on the 3rd Day following Delivery, unless the recipient Delivers to the other party Notice of the acceptance of the last Delivered offer prior to that date and time, in which case this Contract will remain in full force and effect.

Failure of either party to respond within 3 Days after Delivery of a notice from the other party will result in acceptance by both parties of the terms of the most recent notice.

**B.** Notice declaring this Contract void.

☐     2. **GENERAL INSPECTION CONTINGENCY.** This Contract is contingent until 9 p.m. on the _____Day after the Date of Ratification ("Deadline") for satisfactory inspections of the property by the Buyer, a home inspection firm and/or other representative(s) at the Buyer's discretion and expense. The Seller will have all utilities in service at the time of inspection(s). In the event of an unsatisfactory inspection, as determined by Buyer in his sole discretion, Buyer may, by Notice to Seller, declare this contract null and void in which case Buyer's deposit shall be refunded in full. In the event such Notice is not given by the Deadline, this contract will remain in full force and effect.

☒     3. **"AS IS" PROPERTY CONDITION.** The Property, including but not limited to electrical, plumbing, heating, air conditioning, equipment and fixtures ("the Property"),  is sold and shall be delivered in its "As Is" physical condition, to be deter-mined as of the          ☒ Date of Ratification,       ☐  the Date of the Home Inspection or       ☐ (other)
_____ . The Seller makes no representation or warranty, express or implied, as to the condition of the Property or any equipment or System contained therein. All clauses in this Contract pertaining to Property condi-tion, termites or compliance with city, state or county regulations are hereby deleted from this Contract. Smoke detectors will be installed as required by the laws or regulations of the appropriate jurisdiction. The property shall be delivered free and clear of trash and debris and broom clean.

☐     4. **RADON TESTING.** This Contract is contingent until 9 p.m. on the _____Day after the Date of Ratification ("Deadline") to allow the Buyer, at the Buyers discretion and expense, to have the property inspected for the presence of radon by a Testing Firm listed with the U.S. Environmental Protection Agency ("EPA"), National Radon Safety Board ("NRSB"), or the National Environmental Health Association ("NEHA") using an EPA approved testing method. **Testing device to be placed and retrieved by an EPA, NRSB or NEHA listed technician or their authorized subcontractor.** This contingency will terminate at the Deadline unless by the Deadline, the Buyer Delivers to the Seller a copy of the radon testing report which confirms the presence of radon that equals or exceeds the action level established by the EPA together with either **A** or **B:**

   1.   A Radon Testing Notice requiring the Seller at Seller's expense prior to settlement to remediate the radon condition by contracting with an **EPA, NRSB or NEHA listed remediation firm** to reduce the presence of radon below the action level established by the EPA and to provide Buyer written verification that the required remediation has been performed.

If the Seller elects not to perform in accordance with the Radon Testing Notice or makes another offer, the Seller will Deliver notice to the Buyer of such decision within 3 Days after Delivery of the Radon Testing Notice.

©2005, The Greater Capital Area Association of REALTORS ®, Inc.
This recommended form is the property of the Greater Capital Area Association of REALTORS ®, Inc. and is for use by members only.
Previous editions of this form should be destroyed.

REALTOR®
GCAAR Form # MC & DC 1332A/B  LF236
Addendum of Clauses

10/2005
E No:  E Date:
____ of ____

Within 3 Days after Delivery of a notice from one party, the other party may:

    (i)   Deliver notice accepting the terms contained in the other party's notice; or
    (ii)  Deliver notice continuing negotiations by making another offer; or
    (iii) Deliver notice that this Contract will become void at 9 p.m. on the 3rd Day following Delivery, unless the recipient delivers to the other party notice of the acceptance of the last Delivered offer prior to that date and time, in which case this Contract will remain in full force and effect.

Failure of either party to respond within 3 Days after Delivery of a Notice from the other party will result in acceptance by both parties of the terms of the most recent notice.

**B.** Notice declaring this Contract void.

☐   **5. LEAD-BASED PAINT INSPECTION CONTINGENCY.** This Contract is contingent until 9 p.m. on the _____ Day after the Date of Ratification **(must be 10 days or such other period as shall be mutually agreeable to the Buyer and Seller)** ("Deadline") to allow Buyer, at Buyer's discretion and expense, to have a risk assessment or inspection of the interior and exterior of the subject property for the presence of lead paint and/or lead-based paint hazards ("Inspection"). Such Inspection shall be performed by an individual certified by the Maryland Department of the Environment ("MDE"), for Maryland properties, or the DC Department of Health Lead Based Paint Program, for DC Properties, to conduct such assessment or inspection ("Certified Inspector"). This contingency will terminate at the Deadline unless by the Deadline, Buyer Delivers to Seller a copy of the risk assessment report or inspection report which reveals conditions for which the Certified Inspector recommends corrective action together with either A or B.

**A.** Lead-Based Paint Testing Notice identifying specific lead based paint hazards and requiring Seller at Seller's expense prior to settlement to perform requisite corrective action to abate such lead based paint hazards. In the event Seller agrees to have the corrective action performed, Seller shall furnish, not later than the date of settlement, a written certification by a Certified Inspector demonstrating that the specified conditions have been remedied.

If Seller elects not to perform in accordance with the Lead Based Paint Notice or makes another offer, Seller will Deliver notice to Buyer of such decision within 3 Days after Delivery of the Lead Based Paint Notice.

Within 3 Days after Delivery of a notice from one party, the other party may:

    (i)   Deliver notice accepting the terms contained in the other party's notice; or
    (ii)  Deliver notice continuing negotiations by making another offer; or
    (iii) Deliver notice that this Contract will become void at 9 p.m. on the 3rd Day following Delivery, unless the recipient Delivers to the other party notice of the acceptance of the last Delivered offer prior to that date and time, in which case this Contract will remain in full force and effect.

Failure of either party to respond within 3 Days after Delivery of a Notice from the other party will result in acceptance by both parties of the terms of the most recent notice.

**B.** Notice declaring this Contract void.

☐   **6. POST SETTLEMENT AIR CONDITIONING AND/OR SWIMMING POOL CONTINGENCY.**
These provisions shall apply to the following system(s) (the "System") (check appropriate system(s)):
☐ the Air Conditioning System; and/or ☐ the Swimming Pool System (defined as the swimming pool and related equipment, including the structural integrity of the swimming pool).

Due to weather conditions, the System located at the Property cannot be adequately tested to ensure that it is in compliance with the Equipment, Maintenance and Condition paragraph or the Condition of Property and Possession paragraph, as applicable, of the Sales Contract and this Addendum (the "Required Condition"). Buyer and Seller agree that Buyer shall, at his expense, make an inspection of the System at the earliest practicable date, consistent with the weather conditions, but in no event later than the May 31 following ratification (the "Final Inspection Date"). Seller's agreement that the System will be in the Required Condition at the time of settlement or occupancy, whichever comes first, is hereby extended through the date of the inspection of the System, but in no event later than the Final Inspection Date.

Buyer shall give Notice to Seller of the date and time on which the inspection is to be made, and Seller shall have the option of being present or represented at said inspection. The inspection shall be conducted by a heating and air conditioning technician, or pool service company, as appropriate, licensed in the jurisdiction in which the Property is located. **Buyer agrees not to attempt to operate the System prior to the scheduled date for the inspection. In the event Buyer attempts to operate the System prior to said inspection, then any warranty hereunder, express or implied, by Seller, shall be deemed to be null and void.**

In the event that the aforesaid inspection shows the System to be in the Required Condition, then Seller's obligations hereunder with respect to the System shall be deemed fulfilled. In the event that the aforesaid inspection shows the System not to be in the Required Condition, Buyer shall provide Notice of same to Seller no later than the Final Inspection Date, in which event Seller shall be responsible for the actual cost necessary to place the System in the Required Condition. All remedial action taken hereunder shall be performed in a good and workmanlike manner by a heating and air conditioning contractor or pool service company, as appropriate, selected by Seller who is licensed in the jurisdiction in which the Property is located, and shall be completed within 10 days after Buyer's Notice to Seller ("Seller's Timeframe"). Buyer shall make the Property available at

©2005, The Greater Capital Area Association of REALTORS ®, Inc.
This recommended form is the property of the Greater Capital Area Association of REALTORS ®, Inc. and is for use by members only.
Previous editions of this form should be destroyed.

REALTOR®
GCAAR Form # MC & DC /332A/B  LF236
Addendum of Clauses

Page 2 of 6

10/2005
E No:  E Date:
____ of ____

reasonable times for the completion of such work. In the event that the System is not in the Required Condition by the expiration of Seller's Timeframe, Buyer shall be irrevocably authorized to have the required remedial action performed by a contractor meeting the aforesaid qualifications. Upon completion of the remedial action, but no later than 10 days following the expiration of Seller's Timeframe ("Buyer's Timeframe"), Buyer shall provide a Notice to Seller including a copy of the contractor's invoice and instructions as to whether the amount shown in said invoice shall be paid directly to said contractor or to Buyer as a reimbursement for covered expenses. Upon receipt of said Notice, Seller shall immediately make payment as instructed in the Notice.

In the event that any Notice required to be given in this Addendum is not given within the timeframe specified, then Seller's obligations hereunder with respect to the System shall be deemed fulfilled.

☐    **7. SELLER'S CREDIT(S) TO BUYER (For use with the MAR contract.)** In addition to any other amount(s) the Seller has agreed to pay under other provisions of this Contract, the Seller shall credit the Buyer at time of settlement with the sum of $ _____ towards Buyer's settlement costs. It is the Buyer's responsibility to confirm with his lender, if applicable, that the entire credit provided for herein may be utilized. **If lender prohibits the Seller from payment of any portion of this credit, then said credit shall be reduced to the amount allowed by the lender.**

☐    **8. HOLDING DEPOSIT CHECK.** It is understood and agreed by all Parties that the Buyer has instructed the Escrow Agent to hold and not deposit the above described deposit check until _____ Days after Ratification at which time said check shall be deposited by the Broker.

☐    **9. INTEREST-BEARING ACCOUNT DEPOSIT.** The Parties hereto agree and authorize _____, Escrow Agent, to place the deposit in an interest-bearing escrow account. Interest shall accrue and be payable to the Buyer at time of settlement. In order to establish an Interest Bearing Account, the Buyer understands that a completed W-9 form and a copy of a government issued photo ID must be given to the Escrow Agent. A Processing fee of $ _____ shall be charged to the party receiving the interest by the above Escrow Agent for this service. In the event of a forfeiture of deposit, any interest accrued shall be payable to the Seller.

☐    **10. APPRAISAL CONTINGENCY.** The Contract IS CONTINGENT until 9 p.m. on _____ day after the Date of Ratification the _____ ("Deadline") for Buyer to obtain a written appraised valuation of the property (hereinafter "Appraisal") certifying the value of the Property to be no less than the sales price. (Check with your lender to confirm that the Appraisal will be completed by the Deadline). If Buyer is obtaining financing, the Lender shall select the Appraiser. If this is a cash sale, the Buyer shall select the Appraiser. The Appraiser shall be licensed to perform appraisals in the jurisdiction in which the property is located. Seller shall make the property available for inspection by such Appraiser.

In the event that the Appraisal is lower than the Sales Price, the Buyer has the option of proceeding with this Contract at the stated Sales Price without regard to the Appraisal. However, should the Buyer decline to proceed with this Contract at the stated Sales Price (due to the Appraisal being lower than the stated Sales Price), Buyer shall deliver to Seller, by the Deadline, a Notice (See GCAAR Buyer's Appraisal Notice), requesting that the sales price be reduced to a specified lower amount of not less than the appraised value, together with a copy of the written Appraisal ("Buyer's Appraisal Notice").

Should Buyer fail to deliver Buyer's Appraisal Notice by the Deadline, Buyer's Appraisal Contingency will continue, unless Seller at Seller's option, prior to Seller's receipt of the Buyer's Appraisal Notice, gives Notice to Buyer that the Deadline has passed and the Contingency will EXPIRE. If Seller Delivers such Notice this Contingency will EXPIRE at 9 p.m. on the third day following Delivery of Seller's Notice, unless prior to that date and time Buyer delivers Buyer's Appraisal Notice. If this Contingency expires pursuant to the terms of this paragraph, this contract will remain in full force and effect.

All Notices (under this Appraisal Contingency) delivered subsequent to the delivery of the Buyer's Appraisal Notice shall be treated as follows:

Within 3 Days after Notice Delivery of a notice from one party, the other party may:

1.  Deliver notice accepting the terms contained in the other party's notice; OR
2.  Deliver notice continuing negotiations by making another offer; OR
3.  Deliver notice that this Contract will become void at 9:00 p.m. on the 3rd Day following Delivery, unless the recipient delivers to the other party Notice of the acceptance of the last Delivered offer prior to that date and time, in which case, this Contract will remain in full force and effect.

FAILURE OF EITHER PARTY TO RESPOND WITHIN 3 DAYS AFTER DELIVERY OF A NOTICE FROM THE OTHER PARTY WILL RESULT IN THE <u>CONTRACT BECOMING VOID.</u>

☐    **11. PREQUALIFICATION LETTER CONTINGENCY.** This Contract is contingent until 9 p.m. on the _____ Day after the Date of Ratification ("Deadline") upon the Buyer Delivering to the Seller a prequalification letter from an institutional lender stating that the financing described in this Contract is available to the Buyer and, based upon written loan application, a preliminary credit report, and the information provided by the Buyer, the financing should be committed subject to appropriate verification, approval and commitment. At anytime after the Deadline, but prior to Delivery to the Seller of the prequalification letter, the Seller may give notice to the Purchaser declaring this Contract void.

©2005, The Greater Capital Area Association of REALTORS ®, Inc.
This recommended form is the property of the Greater Capital Area Association of REALTORS ®, Inc. and is for use by members only.
Previous editions of this form should be destroyed.



*BRR - 12/15/05    JV VB*

GCAAR Form # MC & DC 1332A/B LF236
Addendum of Clauses

10/2005
E No:  E Date:
___ of ___

☐  **12. GIFT LETTER.** This Contract is contingent until 9 p.m., on the _____ Day after the Date of Ratification ("Deadline") upon the Buyer providing to the Seller a Gift Letter and necessary documentation satisfactory to the lender ("Gift Letter") in the amount of $ _____ from _____. At anytime after the Deadline, but prior to Delivery to the Seller of the Gift Letter, the Seller may give notice to the Buyer declaring this Contract void. Once the Gift Letter has been Delivered, if the Purchaser does not have the gift funds to settle as provided in this Contract, the Buyer will be in default.

☐  **13. SALE OF THE BUYER'S PROPERTY AND KICK-OUT.** This Contract is contingent until 9 p.m. on the _____ Day after the Date of Ratification ("Deadline") upon the sale of the Buyer's property located at

_____ , _____ , _____

("Buyer's Property"). If the Buyer does not satisfy or remove this contingency by the Deadline pursuant to paragraph 13C below, then at any time after the Deadline, but prior to the Buyer satisfying or removing this contingency, either the Seller or the Buyer may declare this Contract void by providing notice to the other party.

**A.**  The Seller may continue to offer the Property for sale and accept bona fide back-up offers to this Contract. If during the term of this contingency, a back-up offer is accepted, the Seller will Deliver notice to the Buyer requiring that this contingency be satisfied or removed pursuant to paragraph 13C below not later than 9 p.m. on the _____ Day after Delivery of the notice, or this Contract will become void.

**B.**  The Buyer's Property will be listed exclusively and actively marketed by a licensed real estate broker and entered into a multiple listing service within 3 Days after the Date of Ratification at a price not to exceed $ _____ .

**C.**  The Buyer may:

(i)   satisfy this contingency by Delivering to the Seller a copy of the ratified contract for the sale of the Buyer's Property with evidence that all contingencies, other than financing, have been removed or waived, together with a prequalification letter as described in the Prequalification Letter Contingency paragraph of this addendum for the Buyer of the Buyer's Property, **or**

(ii)  remove this contingency by Delivering to the Seller (a) the lender's letter stating that the financing is not contingent in any manner upon the sale and settlement of any real estate or obtaining a lease of any real estate and that the Buyer has sufficient funds available for the down payment and closing costs necessary to complete settlement; or (b) evidence of sufficient funds available to complete settlement without obtaining financing.

**D.**  If the Buyer satisfies the requirements of Paragraph 13C (i) above, this Contract will remain contingent upon the settlement of the sale of the Buyer's Property. Settlement under this Contract may not be delayed more than_____ Days after the settlement date (specified in this contract) without the parties' written consent. If a further delay is required to obtain coinciding settlements and the parties do not agree, then this Contract will become void. If at any time after the Date of Ratification the contract for the sale of the Buyer's Property becomes void, the Buyer will immediately Deliver notice to the Seller together with evidence of such voiding, at which time either the Seller or the Buyer may declare this Contract void by Delivering notice to the other party. This paragraph will survive the satisfaction of the contingency for the sale of the Buyer's Property.

☐  **14. BACK-UP CONTRACT OR OFFER.** This Contract is first back-up to another contract or offer dated, _____ between the Seller and _____ as the Buyer. This Contract shall become the primary contract immediately upon Delivery of notice from the Seller that the other contract or offer is void along with a copy of the fully executed release. The Buyer may void this back- up contract at any time prior to its becoming primary by Delivering notice to the Seller. If the contract dated _____ settles, this back-up contract will become void. The rights and obligations of the parties under the primary contract are superior to the rights and obligations of the parties to this back-up contract. All timeframes contained in this contract shall not commence until the date this contract becomes primary. Additionally, the date for Settlement will be _____ Days after the date this contract becomes primary.

☐  **15. COINCIDING SETTLEMENTS.** Settlement on this Contract is contingent upon the settlement on the contract for the sale of the Buyer's Property located at _____

("Buyer's Property") A copy of said contract is attached evidencing that all contingencies, other than financing, have been removed or waived, along with a prequalification letter as described in the Prequalification Letter Contingency paragraph of this addendum for the Buyer of the Buyer's Property. Settlement under this Contract may not be delayed more than _____ Days after the settlement date (specified in this Contract) without the parties' written consent. If a further delay is required to obtain coinciding settlements and the parties do not agree, then this Contract will become void. If at any time after the Date of Ratification the contract for the sale of the Buyer's Property becomes void, the Buyer will immediately Deliver notice to the Seller together with evidence of such voiding, at which time either the Seller or the Buyer may declare this Contract void by Delivering notice to the other party

©2005, The Greater Capital Area Association of REALTORS ®, Inc.
This recommended form is the property of the Greater Capital Area Association of REALTORS ®, Inc. and is for use by members only.
Previous editions of this form should be destroyed.



GCAAR Form MC & DC 1332A/B LF236
Addendum of Clauses

Page 4 of 9    10/2005
E No:  E Date:
___ of ___

☐ **16. OPTION TO KEEP HOUSE ON MARKET.** The Seller may continue to offer this property for sale and accept bona fide back-up offers to this Contract. If during the contingency period (s) as set forth in paragraph #'s _____ of this Contract or paragraph #'s _____ of form # _____ , a back-up offer is accepted, the Seller will Deliver notice to the Buyer together with a copy of the back-up Contract requiring that said contingency(ies) be satisfied or removed no later than 9 p.m. on the _____ Day after Delivery of the notice, or this Contract will become void.

☐ **17. CONTINGENT ON THE SELLER PURCHASING ANOTHER HOME.** This Contract is contingent until 9 p.m. on the _____ Day after the Date of Ratification ("Deadline") to allow the Seller to obtain a ratified contract to purchase another home. This provision will terminate at the Deadline and this Contract will remain in full force and effect unless the Seller declares this Contract void by Delivering notice to the Purchaser by the Deadline.

☐ **18. THIRD PARTY APPROVAL.** This Contract is contingent upon the approval of _____ by 9 p.m. on the _____ Day after the Date of Ratification ("Deadline"). If notice of disapproval is not Delivered to the other party by the Deadline, this contingency will terminate and this Contract will remain in full force and effect. No notice of approval is required. If notice of disapproval is Delivered by the Deadline, this Contract will become void.

☐ **19. ITEMS TO BE REMOVED.** Notwithstanding the provisions of this Contract, the following fixtures and/or items of personal property shall not convey and shall be removed from the subject property by the Seller prior to settlement and will not be replaced:

_____
_____
_____

☐ **20. POST-SETTLEMENT OCCUPANCY AGREEMENT.** The Parties agree that the Seller shall occupy the property for a period of _____ Days following settlement at the rate of $ _____ per day. Seller shall pay a security deposit of $ _____ at the time of settlement. The Seller and the Buyer acknowledge that they have read and executed, or will execute at settlement, the GCAAR Post-Settlement Occupancy Agreement and agree to be bound by its terms and provisions.

☐ **21. PRE-SETTLEMENT OCCUPANCY AGREEMENT.** The Parties agree that Buyer shall occupy the property prior to settlement commencing on the _____ day of _____ at the rate of $ _____ per Day. The Seller and the Buyer acknowledge that they have read and executed, or will execute prior to occupancy, the GCAAR Pre-Settlement Occupancy Agreement and agree to be bound by its terms and provisions.

☐ **22. LICENSED SELLER/BUYER AGENT.** (NOTE: This clause should be used when Buyer or Seller is a licensed real estate Agent or is related to one of the Parties. Failure to include could result in violation of the law.) The Parties acknowledge that _____ is a licensed real estate agent in _____ (DC, MD, VA) associated with _____ and may share in the brokerage fee to be paid and is the Buyer, Seller or is related to one of the Parties hereto.

☐ **23. BROKERAGE FEE PAID BY THE BUYER.** It is understood and agreed by all parties that (company name) _____ , (agent's name) _____ is acting as an agent solely representing the Buyer in this transaction ("Buyer's Broker.") The Seller has no obligation to the Buyer's Broker, and does not owe a brokerage fee or other consideration of any nature to said Buyer's Broker. The settlement office is directed to collect from the Buyer funds, at settlement, and to disburse said fee, as per the separate Buyer's Broker Agreement between the Buyer's Broker and the Buyer. This Buyer's Broker's fee is separate and apart from any brokerage fee owed to the Seller's Listing Broker pursuant to the agency paragraph of the contract. The parties acknowledge that the said Buyer's Broker relationship was disclosed to the Seller and/or the Seller's agent prior to showing the property to the Buyer.

☐ **24. AGREEMENT BETWEEN SELLER (FSBO/BUILDER) AND BUYER'S BROKER.** It is understood and agreed by all Parties that (agent's name) _____ , of (company name) _____ is acting as an agent solely representing the Buyer in this transaction ("Buyer's Broker.") The Seller agrees to pay to the Buyer's Broker a cash payment of $ _____ . The settlement office is hereby irrevocably directed to deduct from the proceeds of the sale at settlement and pay the said Buyer's Broker fee. This fee is separate and apart from, and is in addition to, any brokerage fee owed to any Listing Broker pursuant to the agency paragraph of this Contract. The Parties acknowledge that said Buyer's Broker relationship was disclosed to the Seller and/or the Seller's agent prior to showing the property to the Buyer.

☐ **25. MASTER PLAN REVIEW FOR MONTGOMERY COUNTY PROPERTIES.** (except City of Rockville.) Notwithstanding any provisions to the contrary, this Contract is contingent until 9:00 P.M. on the _____ Day after the Date of Ratification ("Deadline"), to allow the Buyer the opportunity to review the applicable County Master Plan and the municipal land use plan for the area in which the property is located as well as any amendment to either plan and any approved official map showing planned uses, roads and highways, parks and other public facilities affecting the property ("Master Plan"). In the event the

©2005, The Greater Capital Area Association of REALTORS ®, Inc.
This recommended form is the property of the Greater Capital Area Association of REALTORS ®, Inc. and is for use by members only.
Previous editions of this form should be destroyed.



☐ **14. BACK-UP CONTRACT OR OFFER.** This Contract is first back-up to another contract or offer dated, _12|18|05_
between the Seller and ___ *Parcy Flynn or Assigns* ___ as the Buyer. This Contract shall
become the primary contract immediately upon Delivery of notice from the Seller that the other contract or offer is void along
with a copy of the fully executed release. The Buyer may void this back- up contract at any time prior to its becoming primary
by Delivering notice to the Seller. If the contract dated _12|18|05_ settles, this back-up contract will become
void. The rights and obligations of the parties under the primary contract are superior to the rights and obligations of the parties to
this back-up contract. All timeframes contained in this contract shall not commence until the date this contract becomes primary.
Additionally, the date for Settlement will be _200_ Days after the date this contract becomes primary *plus*
*any additional time under Paragraph 18 of the main contract.*

Buyer is dissatisfied with anything contained in the applicable Master Plan or municipal land use plan, in the Buyer's sole discretion, the Buyer shall Deliver notice of disapproval to the Seller on or before the Deadline specified in this paragraph, in which event this Contract shall be null and void and the Buyer's deposit shall be returned. If no such notice is received by said Deadline, this contingency shall automatically expire and be of no force and effect. (This clause may not be used for property within the corporate limits of the City of Rockville).

☐   **26. ADDITIONAL PROVISIONS:** _____

_____

_____

_____

_____

**THE FOLLOWING GENERAL PROVISIONS PARAGRAPH SHALL APPLY TO THIS ENTIRE CONTRACT AND THE NOTICES PARAGRAPH SHALL SUPERSEDE ANY OTHER NOTICE PROVISION IN THIS ENTIRE CONTRACT.**

**GENERAL PROVISIONS.**  This contract shall be deemed ratified when the contract, all addenda and any modifications thereto have been signed and initialed, where required by all parties, and Delivered to the other party pursuant to the Notices paragraph.

**NOTICES.**  All notices under the contract shall be in writing.  Notices to the Seller shall be effective when delivered to the Seller or an Agent of the Seller named in the contract (including a Dual Agent, Intra-Company Agent, or Designated Representative assigned to the Seller, as applicable, or alternatively, to the Agent's Supervising Manager.)  Notices to the Buyer shall be effective when delivered to the Buyer or an Agent of the Buyer named in the contract (including a Dual Agent, Intra-Company Agent, or Designated Representative assigned to the Buyer, as applicable, or alternatively, to the Agent's Supervising Manager). "Purchaser" means "Buyer" and vice versa. "Delivery" means hand carried, sent by overnight delivery service, sent by wired or electronic medium which produces a tangible record of the transmission (such as telegram, mailgram, telecopier or "Fax", email which includes an attachment with an actual copy of the executed instruments being transmitted, or U.S. Postal mailing.) In the event of overnight delivery service, Delivery will be deemed to have been made on the next business day (Monday through Friday, excluding federal holidays) following the sending, unless earlier receipt is acknowledged in writing. In the event of U.S. Postal mailing, Delivery will be deemed to have been made on the third business Day (Monday through Saturday, excluding federal holidays) following the mailing, unless earlier receipt is acknowledged in writing. "Day" "Days" means calendar days unless otherwise specified. For the purpose of computing time periods, the first Day will be the Day following Delivery and the time period will end at 9 p.m. on the Day specified.  The provisions of this paragraph regarding delivery of notices shall also be applicable to delivery of resale packages for condominiums, cooperatives and/or homeowners associations as may be required in a separate addendum.

Except as modified by this Addendum, all of the terms and provisions of this Contract are hereby expressly ratified and confirmed and will remain in full force and effect.  The captions and headings are for convenience of reference only.

| | | | |
|---|---|---|---|
| _Robert Berry_ | 12/16/05 | _Benjamin J. Gentry_ | 12/15/05 |
| SELLER  Conservator | DATE | PURCHASER | DATE |
| | | | |
| SELLER | DATE | PURCHASER | DATE |

| | |
|---|---|
| HOME TELEPHONE NUMBER | HOME TELEPHONE NUMBER |
| | |
| OFFICE TELEPHONE NUMBER | OFFICE TELEPHONE NUMBER |
| | |
| FAX NUMBER | FAX NUMBER |

| | |
|---|---|
| LISTING AGENT: | SELLING AGENT/BUYER'S AGENT: |
| | |
| Name | Name |
| 64643 | |
| Real Estate License Number and Jurisdiction | Real Estate License Number and Jurisdiction |

©2005, The Greater Capital Area Association of REALTORS®, Inc.
This recommended form is the property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
Previous editions of this form should be destroyed.







**SELLER'S DISCLOSURE STATEMENT**

Instructions to the Seller for Seller's Disclosure Statement:

These instructions are to assist the Seller in completing the required Seller's Disclosure Statement in order to comply with the District of Columbia Residential Real Property Seller Disclosure Act.

1. **Who must complete the Seller's Disclosure Statement?** The Seller, not the broker and not the management company, condominium association, cooperative association or homeowners association.

2. **In what types of transactions must the Seller provide the Seller's Disclosure Statement to the Purchaser?** The Act applies in the following types of transfers or sales of District of Columbia real estate:
   (a) where the property consists of <u>one</u> to <u>four</u> residential dwelling units, <u>and</u>,
   (b) the transaction is a sale, exchange, installment land contract, lease with an option to purchase, or any other option to purchase, <u>and</u>,
   (c) the purchaser expresses, in writing, an interest to reside in the property to the transferred.

   However, the Act does <u>not</u> apply to: *exempt*
   (a) court ordered transfers;
   (b) transfers to a mortgagee by a mortgagor in default;
   (c) transfers by sale under a power of sale in a deed of trust or mortgage or any foreclosure sale under a decree, or by a mortgagee who acquired the property at foreclosure, decree or deed in lieu of foreclosure; *exempt*
   (d) transfers by a non-occupant fiduciary administering a decedent's estate, guardianship, conservatorship or trust;
   (e) transfers between co-tenants;
   (f) transfers made to the transferor's spouse, parent, grandparent, child, grandchild or sibling (or any combination of the foregoing);
   (g) transfers between spouses under a divorce judgment, separate maintenance judgement, or property settlement agreement incidental to such a judgment;
   (h) transfers or exchanges to or from any governmental entity;
   (i) transfers made by a person of newly constructed residential property that has not been inhabited.

3. **When does the Seller's Disclosure Statement have to be provided to the Purchaser?** In the sale, before or at the time the prospective transferee executes a purchase agreement with the transferor. In an installment sales contract (where a binding purchase contract has not been executed), or in the case of a lease with an option to purchase, before or at the time the prospective transferee executes the installment sales contract or lease with the transferor.

4. **What information must the Seller disclose?** Answer ALL questions on the Seller's Disclosure Statement. If some items do not apply to your property, check "N/A" (not applicable). If you do not know the facts, check "UNKNOWN". Report actually known conditions referred to in the questions. Each disclosure must be made in "good faith" (honesty in fact in the making of the disclosure). Attach additional pages with your signature if additional space is required.

   **The Seller of a condominium unit, cooperative unit, or a lot in a homeowners association, is to provide information only as to the Seller's unit or lot, and not as to any common elements, common areas outside of the unit or lot.**

5. **What is the remedy if the Seller does not provide the Seller's Disclosure Statement to the Transferee?** If the Seller's Disclosure Statement is delivered <u>after</u> the purchaser executes the purchase agreement, installment sales contract or lease with an option to purchase, the purchaser may terminate the transaction by written notice to the seller not more than five (5) calendar days after receipt of the Seller's Disclosure Statement by the purchaser, and the deposit must be returned to the purchaser. The right to terminate is waived if not exercised before the earliest of:
   (a) the making of an application for a mortgage loan (if the lender discloses that the right to rescind terminates on submission of the application); or
   (b) settlement or date of occupancy in the case of a sale; or
   (c) occupancy in the case of a lease with an option to purchase.

6. **If the Seller finds out different information after providing the Seller's Disclosure Statement to the Purchaser what must the Seller do?** If information becomes inaccurate after delivery of the disclosure form, the inaccuracy shall not be grounds for terminating the transaction. Any disclosures may be amended, in writing, but the amendment is subject to the same requirements as the original disclosure.

7. **How must a Seller deliver the Seller's Disclosure Statement to the Transferee?** The Seller's Disclosure statement must be delivered by personal delivery, facsimile delivery, or by registered mail to the transferee. Execution by the transferor of a facsimile is considered execution of the original.

© 2005, The Greater Capital Area Association of Realtors®, Inc..
This recommended form is the property of the Greater Capital Area Association of REALTORS®, Inc, and is for use by members only.
Previous editions of this Form should be destroyed. GCAAR Form #104



LF277
7/2005



E No:   E Date:
____ of ____

## SELLER'S DISCLOSURE STATEMENT

**Property Address:**  911 Evarts Street, NE

**Condominium Unit:** _____  **Cooperative Unit:** _____

**Purpose of Statement:** This Statement is a disclosure by the Seller of the defects or information actually known by the Seller concerning the property, in compliance with the District of Columbia Residential Real Property Seller Disclosure Act. Unless otherwise advised, the Seller does not possess any expertise in construction, architecture, engineering, or any other specific area related to the construction or condition of the improvements on the property or the land. Also, unless otherwise advised, the Seller has not conducted any inspection of generally inaccessible areas such as the foundation or roof. THIS STATEMENT IS NOT A WARRANTY OF ANY KIND BY THE SELLER OR BY ANY AGENT REPRESENTING THE SELLER IN THIS TRANSACTION, AND IS NOT A SUBSTITUTE FOR ANY INSPECTION OR WARRANTIES THE BUYER MAY WISH TO OBTAIN.

**Seller's Disclosure:** The Seller discloses the following information with the knowledge that, even though this is not a warranty, the Seller specifically makes the following statements based on the Seller's actual knowledge at the signing of this document. Upon receiving this statement from the Seller, the Seller's agent is required to provide a copy to the Buyer or the agent of the Buyer. The Seller authorizes its agent(s) to provide a copy of this statement to any prospective buyer or agent of such prospective buyer in connection with any actual or anticipated sale of property. The following are statements made solely by the Seller and are not the statements of the Seller's agent(s), if any. This information is a disclosure only and is not intended to be part of any contract between Buyer and Seller.

If this is a Sale of a condominium unit or cooperative unit, or lot in the homeowners association, this disclosure form provides information only as to the unit (as defined in the governing documents of the association) or lot (as defined in the covenants applicable to the lot), and not as to any common elements, common areas or other areas outside of the unit or lot.

**A.**   **Property Conditions, Improvements & Additional Information:**

| | Yes | No | Unknown | N/A |
|---|---|---|---|---|
| 1. Water system: | | | | |
| Well supplied | ☐ | ☐ | ☐ | ☐ |
| City supplied | ☐ | ☐ | ☐ | ☐ |
| Working order? | ☐ | ☐ | ☐ | ☐ |
| 2. Sewer system: | | | | |
| Septic tank | ☐ | ☐ | ☐ | ☐ |
| City supplied | ☐ | ☐ | ☐ | ☐ |
| Working order? | ☐ | ☐ | ☐ | ☐ |
| 3. Insulation | ☐ | ☐ | ☐ | ☐ |
| 4. Urea formaldehyde foam insulation | ☐ | ☐ | ☐ | ☐ |
| 5. Leaks in roof | ☐ | ☐ | ☐ | ☐ |
| 6. Age of roof | | | | |
| 0-5 years | ☐ | | | |
| 5-10 years | ☐ | | | |
| 10-15 years | ☐ | | | |
| 15 + years | ☐ | | | |
| 7. Wall defects | ☐ | ☐ | ☐ | ☐ |
| 8. Floor defects | ☐ | ☐ | ☐ | ☐ |
| 9. Foundation defects | ☐ | ☐ | ☐ | ☐ |
| 10. Window defects | ☐ | ☐ | ☐ | ☐ |
| 11. Evidence of water in basement | ☐ | ☐ | ☐ | ☐ |
| 12. Heating system: | | | | |
| Central | ☐ | ☐ | ☐ | ☐ |
| Gas | ☐ | ☐ | ☐ | ☐ |
| Oil | ☐ | ☐ | ☐ | ☐ |
| Heat Pump | ☐ | ☐ | ☐ | ☐ |
| Working order? | ☐ | ☐ | ☐ | ☐ |
| Age of Heating System: | | | | |
| 0-5 years | ☐ | | | |
| 5-10 years | ☐ | | | |
| 10+ years | ☐ | | | |

© 2005, The Greater Capital Area Association of Realtors®, Inc.·This recommended form is the property of the Greater Capital Area Association of REALTORS®, Inc, and is for use by members only. Previous editions of this Form should be destroyed. GCAAR Form #104

LF277
7/2005

E No:   E Date:
___ of ___

Exempt RB.

|  | Yes | No | Unknown | N/A |
|---|---|---|---|---|
| **13. Air Conditioning System:** | | | | |
| Central | ☐ | ☐ | ☐ | ☐ |
| Window | ☐ | ☐ | ☐ | ☐ |
| Gas | ☐ | ☐ | ☐ | ☐ |
| Electric | ☐ | ☐ | ☑ | ☐ |
| Heat Pump | ☐ | ☐ | ☐ | ☐ |
| Working order? | ☐ | ☐ | ☐ | ☐ |
| **Age of Air Conditioning System:** | | | | |
| 0-5 years | ☐ | | | |
| 5-10 years | ☐ | | | |
| 10+ years | ☐ | | | |
| **14. Plumbing System:** | | | | |
| Copper | ☐ | ☐ | ☐ | ☐ |
| Galvanized | ☐ | ☐ | ☐ | ☐ |
| Other | ☐ | ☐ | ☐ | ☐ |
| Working order? | ☐ | ☐ | ☐ | ☐ |
| Any known problems? | ☐ | ☐ | ☐ | ☐ |
| **15. Electrical System:** | | | | |
| Working order? | ☐ | ☐ | ☐ | ☐ |
| Any known problems? | ☐ | ☐ | ☐ | ☐ |
| **16. History of Infestation** | | | | |
| Termites | ☐ | ☐ | ☐ | ☐ |
| Carpenter Ants | ☐ | ☐ | ☐ | ☐ |
| Rodents | ☐ | ☐ | ☐ | ☐ |
| Other | ☐ | ☐ | ☐ | ☐ |
| **17. Environmental Problems** | | | | |
| Asbestos | ☐ | ☐ | ☐ | ☐ |
| Radon Gas | ☐ | ☐ | ☐ | ☐ |
| Formaldehyde | ☐ | ☐ | ☐ | ☐ |
| Contaminated soil | ☐ | ☐ | ☐ | ☐ |
| Other | ☐ | ☐ | ☐ | ☐ |

Provide explanations of the foregoing responses here. Attach additional sheets if necessary:

_Exempt RB_

© 2005, The Greater Capital Area Association of Realtors®, Inc..
This recommended form is the property of the Greater Capital Area Association of REALTORS®, Inc, and is for use by members only.
Previous editions of this Form should be destroyed. GCAAR Form #104
Page 3 of 5

LF277
7/2005

E No:  E Date:
___ of ___

**B.** **Appliances/Systems/Services:  The items below are in working order:**

| | Yes | No | Unknown | N/A |
|---|---|---|---|---|
| 1. Range/Oven | ☐ | ☐ | ☐ | ☐ |
| 2. Dishwasher | ☐ | ☐ | ☐ | ☐ |
| 3. Refrigerator | ☐ | ☐ | ☐ | ☐ |
| 4. Range hood/fan | ☐ | ☐ | ☐ | ☐ |
| 5. Disposal | ☐ | ☐ | ☐ | ☐ |
| 6. TV antenna, TV rotor & controls | ☐ | ☐ | ☐ | ☐ |
| 7. Storm Windows | ☐ | ☐ | ☐ | ☐ |
| 8. Garage door opener & remote control | ☐ | ☐ | ☐ | ☐ |
| 9. Alarm system | ☐ | ☐ | ☐ | ☐ |
| 10. Intercom system | ☐ | ☐ | ☐ | ☐ |
| 11. Central vacuum | ☐ | ☐ | ☐ | ☐ |
| 12. Attic fan | ☐ | ☐ | ☐ | ☐ |
| 13. Pool heater, wall liner & equip. | ☐ | ☐ | ☐ | ☐ |
| 14. Microwave oven | ☐ | ☐ | ☐ | ☐ |
| 15. Trash compactor | ☐ | ☐ | ☐ | ☐ |
| 16. Ceiling fan | ☐ | ☐ | ☐ | ☐ |
| 17. Sauna/hot tub | ☐ | ☐ | ☐ | ☐ |
| 18. Lawn sprinkler system | ☐ | ☐ | ☐ | ☐ |
| 19. Water heater | ☐ | ☐ | ☐ | ☐ |
| 20. Water softener/conditioner | ☐ | ☐ | ☐ | ☐ |
| 21. Sump pump | ☐ | ☐ | ☐ | ☐ |
| 22. Furnace | ☐ | ☐ | ☐ | ☐ |
| 23. Humidifier | ☐ | ☐ | ☐ | ☐ |
| 24. Electronic air filter | ☐ | ☐ | ☐ | ☐ |
| 25. Solar heating system | ☐ | ☐ | ☐ | ☐ |
| 26. Fireplace & Chimney | ☐ | ☐ | ☐ | ☐ |
| 27. Wood burning system | ☐ | ☐ | ☐ | ☐ |
| 28. Smoke Detector(s) | ☐ | ☐ | ☐ | ☐ |
| 29. Carbon Monoxide detector(s) | ☐ | ☐ | ☐ | ☐ |

Provide any explanations of the foregoing responses here. Attach additional sheets, if necessary:

_____

_____

UNLESS OTHERWISE AGREED, ALL HOUSEHOLD APPLIANCES ARE SOLD IN WORKING ORDER EXCEPT AS NOTED, WITHOUT WARRANTY BEYOND DATE OF CLOSING.

**C.** **Other items: Are you aware of the following:**

1. Features of the property shared in common with the adjoining landowners:

| | Yes | No | Unknown | N/A |
|---|---|---|---|---|
| Walls | ☐ | ☐ | ☐ | ☐ |
| Seller responsible for maintenance | | | | |
| Fences | ☐ | ☐ | ☐ | ☐ |
| Seller responsible for maintenance | | | | |
| Roads | ☐ | ☐ | ☐ | ☐ |
| Seller responsible for maintenance | | | | |
| Driveways | ☐ | ☐ | ☐ | ☐ |
| Seller responsible for maintenance | | | | |

Other (list)

_____

_____

_____

Seller responsible for maintenance

© 2005, The Greater Capital Area Association of Realtors®, Inc..
This recommended form is the property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only. Previous editions of this Form should be destroyed. GCAAR Form #104

LF277
7/2005

E No:  E Date:
___ of ___

Exempt - RB.

2.  Encroachments    ☐    ☐    ☐    ☐
3.  Easements    ☐    ☐    ☐    ☐
4.  Zoning violations    ☐    ☐    ☐    ☐
5.  Nonconforming uses    ☐    ☐    ☐    ☐
6.  Structural modifications    ☐    ☐    ☐    ☐
7.  Settling problems    ☐    ☐    ☐    ☐
8.  Flooding problems    ☐    ☐    ☐    ☐
9.  Drainage problems    ☐    ☐    ☐    ☐
10. Structural problems    ☐    ☐    ☐    ☐
11. Grading problems    ☐    ☐    ☐    ☐
12. Damage to property from:
     Fire    ☐    ☐    ☐    ☐
     Wind    ☐    ☐    ☐    ☐
     Floods    ☐    ☐    ☐    ☐
     Landslides    ☐    ☐    ☐    ☐

13. Historic District:
     a.  Is the Property in a DC landmark or
        located in a historic district?    ☐    ☐    ☐    ☐
     b.  Has the property been cited for a
        violation during your ownership?    ☐    ☐    ☐    ☐
     c.  Is the property subject to a
        conservation easement?    ☐    ☐    ☐    ☐

Provide any explanations of the foregoing responses here. Attach additional sheets, if necessary.

_____

    The Seller has lived in the residence on the property from _____ (date) to _____ (date). The Seller has owned the property since _____ (date) and makes the statements herein only since that date. The Seller has indicated above as to the condition of all the items based on the information actually known to the Seller.

    Seller certifies that the information in this statement is true and correct to the best of Seller's actual knowledge as of the date of Seller's signature.

    BUYER SHOULD OBTAIN PROFESSIONAL ADVICE AND INSPECTIONS OF THE PROPERTY TO MORE FULLY DETERMINE THE CONDITION OF THE PROPERTY.

Seller _____    Date _____

Seller _____    Date _____

    BUYER HEREBY EXPRESSES AN INTENT TO RESIDE IN THE PROPERTY TO BE TRANSFERRED.

    BUYER HAS READ AND ACKNOWLEDGES RECEIPT OF THIS STATEMENT AND ACKNOWLEDGES THAT THIS STATEMENT IS MADE BASED UPON THE SELLER'S ACTUAL KNOWLEDGE AS OF THE ABOVE DATE; IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES WHICH BUYER MAY WISH TO OBTAIN; AND IS NOT A STATEMENT, REPRESENTATION OR WARRANTY BY ANY OF THE SELLER'S AGENTS OR ANY SUB-AGENTS AS TO THE PRESENCE OR ABSENCE OF ANY CONDITION, DEFECT OR MALFUNCTION OR AS TO THE NATURE OF ANY CONDITION, DEFECT OR MALFUNCTION.

Buyer _____    Date _____

Buyer _____    Date _____

© 2005, The Greater Capital Area Association of Realtors®, Inc..
This recommended form is the property of the Greater Capital Area Association of REALTORS®, Inc, and is for use by members only. Previous editions of this Form should be destroyed. GCAAR Form #104

LF277
7/2005

E No:   E Date:
___ of ___

= ≠ e m p t - N D

BQQ - 12/15/0;



# Disclosure of Information on Lead-Based Paint
## and Lead-Based Paint Hazards
## SALES

For the sale of Property at:  **911 Evarts Street, NE  Washington, DC  20018**

Property Address

**I. SELLER REPRESENTS AND WARRANTS TO LONG & FOSTER,** INTENDING THAT SUCH BE RELIED UPON REGARDING THE ABOVE PROPERTY, THAT (each Seller initial ONE of the following and state Year Constructed):

_____  _____  Property (all portions) was constructed **after January 1, 1978.** (If initialed, complete section V only.)    Year Constructed: _____

_____  _____  Property (any portions) was constructed **before January 1, 1978.** (If initialed, complete all sections.)

_____  _____  Seller is unable to represent and warrant the age of the property. (If initialed, complete all sections.)

SELLER AGREES TO COMPLY WITH REQUIREMENTS OF THE FEDERAL RESIDENTIAL LEAD-BASED PAINT HAZARD REDUCTION ACT OF 1992.

## Lead Warning Statement

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards.*
*A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

**II. Seller's Disclosure (each Seller complete items 'a' and 'b' below):**

a.  Presence of lead-based paint and/or lead-based paint hazards (***initial*** and complete (i) or (ii) below):

(i) _____  _____  Known lead-based paint and/or lead-based paint hazards are present in the housing (explain)

_____

_____

(ii) _____  _____  Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

b.  Records and reports available to the Seller (***initial*** and complete (i) or (ii) below):

(i) _____  _____  Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

_____

(ii) _____  _____  Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**III. Purchaser's Acknowledgment (each Purchaser *initial* and complete items c,d,e and f below)**

c.  12/15/05  _____  Purchaser has read the Lead Warning Statement above.

d.  _____  Purchaser has received copies of all information listed above.    **?** (If none listed, check here.)

e.  _____  Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home.*

f.  Purchaser has (each Purchaser **initial (i) or (ii) below):**

(i) _____  _____  Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

(ii) _____  _____  Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**IV. Agent's Acknowledgment (*initial* item 'g' below)**

g.  _____  Agent has informed the Seller of the Seller's obligations under 42 U.S.C. 4582(d) and is aware of his/her responsibility to ensure compliance.

**V. Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

Robert Raum, Conservator for
Emma Cunningham           12/12/05           Ramon L. Santos    12-15-05

Seller _____    Date _____    Purchaser _____    Date _____

_____    12/12/05    _____    12/15/03

Seller _____    Date _____    Purchaser _____    Date _____

Agent                          Date              Agent                          Date

LF089
7/04

E No: _____  E Date: _____
___ of ___



**Greater Capital Area Association of REALTORS®, Inc.**

# INCLUSIONS/EXCLUSIONS DISCLOSURE AND ATTACHMENT TO LISTING AGREEMENT

ADDRESS    911 Evarts Street, NE  Washington, DC  20018

### FOR USE WITH REGIONAL CONTRACT

PERSONAL PROPERTY, FIXTURES, AND UTILITIES: Unless otherwise negotiated in a contract of sale, the purchase price shall include the following personal property and fixtures: A. Any existing built-in heating and central air conditioning equipment, plumbing and lighting fixtures, sump pump, attic fans, storm windows, storm doors, screens, installed wall-to-wall carpeting, window shades, blinds, smoke and heat detectors, tv antennas, exterior trees and shrubs and B. The items marked YES below as currently installed or offered.

| Included YES NO | | Included YES NO | | Included YES NO | | Included YES NO | |
|---|---|---|---|---|---|---|---|
| ☐ ☐ | Stove or Range | ☐ ☐ | Disposer | ☐ ☐ | Ceiling Fan(s)# | ☐ ☐ | Alarm System ☐ Leased |
| ☐ ☐ | Cooktop | ☐ ☐ | Freezer | ☐ ☐ | Washer | ☐ ☐ | Intercom |
| ☐ ☐ | Wall Oven(s)# | ☐ ☐ | Window Fan(s)# | ☐ ☐ | Dryer | ☐ ☐ | Storage Shed(s)# |
| ☐ ☐ | Refrigerator(s) # | ☐ ☐ | Window A/C Unit(s) # | ☐ ☐ | Furnace Humidifier | ☐ ☐ | Garage Opener(s)# |
| ☐ ☐ | w/ Ice maker | ☐ ☐ | Pool, Equip. & Cover | ☐ ☐ | Electronic Air Filter | ☐ ☐ | w/ remote(s) # |
| ☐ ☐ | Dishwasher | ☐ ☐ | Hot Tub, Equip. & Cover | ☐ ☐ | Central Vacuum | ☐ ☐ | Playground Equipment |
| ☐ ☐ | Built-in Microwave | ☐ ☐ | Satellite Dish & Equip | ☐ ☐ | Water Treatment System | ☐ ☐ | Wood Stove |
| ☐ ☐ | Trash Compactor | ☐ ☐ | Window Treatments | ☐ ☐ | Exhaust Fan(s) | ☐ ☐ | Fireplace Screen/ Doors |

ADDITIONAL INCLUSIONS (SPECIFY):    *"As Is", no warranties or represen-*

ADDITIONAL EXCLUSIONS (SPECIFY):    *tations as to existence or condition of any*
*Personalty*

### FOR USE WITH MAR CONTRACT

INCLUSIONS/EXCLUSION: Unless otherwise negotiated in a contract of sale, the purchase price shall include all permanently attached fixtures, including all smoke detectors.  Certain other now existing items which may be considered personal property, whether installed or stored upon the property, are included or excluded, as follows (if neither column is checked, it shall be considered excluded):

| Included YES | | Included YES | | Included YES | | Included YES | |
|---|---|---|---|---|---|---|---|
| ☐ | Stove or Range | ☐ | Dishwasher | ☐ | Ceiling Fan(s)# | ☐ | Alarm System ☐ Leased |
| ☐ | Cooktop | ☐ | Freezer | ☐ | Clothes Washer | ☐ | Intercom |
| ☐ | Wall Oven(s)# | ☐ | Window Fan(s)# | ☐ | Clothes Dryer | ☐ | Storage Shed(s)# |
| ☐ | Refrigerator(s) # | ☐ | Fireplace Screen/Door | ☐ | Furnace Humidifier | ☐ | Garage Opener(s)# |
| ☐ | w/ Ice maker | ☐ | Pool, Equip. & Cover | ☐ | Electronic Air Filter | ☐ | w/ remote(s) # |
| ☐ | Built-in Microwave | ☐ | Hot Tub Equip. & Cover | ☐ | Water Filter | ☐ | Playground Equipment |
| ☐ | Trash Compactor | ☐ | Screens | ☐ | Water Softener | ☐ | Wood Stove |
| ☐ | Exist. W/W Carpet | ☐ | Storm Windows | ☐ | Drapery/Curtains | ☐ | T.V. Antenna |
| ☐ | Garbage Disposer | ☐ | Storm Doors | ☐ | Drapery Curtain Rods | ☐ | Satellite Dish |
| ☐ | Exhaust Fan(s) | ☐ | Window A/C Unit(s) # | ☐ | Shades/Blinds | ☐ | Central Vacuum |

ADDITIONAL INCLUSIONS (SPECIFY):  _____

ADDITIONAL EXCLUSIONS (SPECIFY):  _____

WATER, SEWAGE, HEATING AND CENTRAL AIR CONDITIONING: (Check all that apply)

Water Supply:  ☑ Public  ☐ Well          Hot Water:  ☐ Oil  ☑ Gas  ☐ Elec.  ☐ Other ____
Sewage Disposal: ☑ Public  ☐ Septic # BR ____  Air Conditioning: ☐ Oil ☑ Gas ☐ Elec. ☐ Heat Pump ☑ Other *no c*
Heating:  ☐ Oil  ☑ Gas  ☐ Elec.  ☐ Heat Pump  ☐ Other _____

I/We the Seller(s) of the above referenced property, have completed these checklists disclosing what conveys with the property and give permission to make this information available to prospective buyers.

*Robert Bunn, Conservator*  12/12/05
Seller          Date          Seller          Date

This recommended form is the property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
®2000, The Greater Capital Area Association of REALTORS®, Inc.

**R** REALTOR®



GCAAR FORM # MC & DC 910A -- 5/2000
LF290

E No:   E Date:
___ of ___

  

---

**THIS NOTICE IS REQUIRED BY LAW AND IS NOT A CONTRACT.**

**THIS DISCLOSURE DOES NOT CREATE A BROKERAGE RELATIONSHIP.**

---

# Disclosure of Brokerage Relationship
## District of Columbia

Prior to providing specific real estate assistance, District of Columbia law requires that a licensee disclose to any party who the licensee does **NOT** represent the identity of the party to the proposed transaction which the licensee does represent. Even though a licensee may not represent you, that licensee must still treat you honestly in the transaction.

We, the undersigned ☒ Buyer(s)/Tenants or ☐ Seller(s)/Landlord(s) acknowledge receipt of this Disclosure, and understand we are **NOT** represented by the licensee identified below.

<u>Betty Gee</u>                                      and    <u>Long & Foster Real Estate, Inc.</u>
     (Licensee & License #)                                    (Brokerage Firm)

The licensee and brokerage firm named above represent the following party in the real estate transaction:

☒ **Seller(s)/Landlord(s)** (The licensee has entered into a written listing agreement with the seller(s) or landlord(s) or is acting as a sub-agent of this listing broker.)

☐ **Buyer(s)/Tenant(s)** (The licensee has entered into a written agency agreement with the buyer/tenant)

☐ **Designated Agent of the**    ☐ **Buyer/Tenant(s) or**    ☐ **Seller(s)/Landlords(s)**
(Both the buyers and sellers have previously consented to "Designated Agency", and the licensee listed above is indicating the parties represented)

<u>Acknowledged</u>                                      <u>12/15/05</u>
Acknowledged                                          Date

<u> </u>                                              <u> </u>
Acknowledged                                          Date

Name of Person(s):  <u>**Robert Bunn, Conservator**  for Emma Cunningham ,          ,</u>

I certify on this date that I, the real estate agent, have delivered a copy of this disclosure to the person(s) identified above.

<u> </u>                                              <u> </u>
Signed (Licensee)                                      Date

  LF232
Rev 07/2005
GCAAR Form #1002

© 2005, The Greater Capital Area Association of REALTORS®, Inc.
This recommended form is the property of The Greater Capital Area
Association of REALTORS®, Inc., and is for use by members only.
Previous editions of this form should be destroyed.
Page 1 of 1

E No:  E Date:
___ of ___

 







**LONG & FOSTER**
REAL ESTATE, INC.

# FINANCIAL INFORMATION SHEET
*(to be completed and signed by purchaser)*

THIS INFORMATION IS PRESENTED WITH THE UNDERSTANDING THAT IT MAY BE USED AS A BASIS FOR THE ACCEPTANCE OF A CONTRACT BY THE SELLER. THE UNDERSIGNED HEREBY AUTHORIZES THE AGENT TO DISCLOSE TO THE SELLER, SELLER'S AGENT, DUAL AGENTS, INTRA-COMPANY AGENTS, COOPERATING AGENTS AND ANY LENDER ALL OR ANY PORTION OF THE INFORMATION CONTAINED IN THIS FINANCIAL INFORMATION SHEET. ANY MISREPRESENTATIONS, FRAUDULENT ENTRIES AND/OR OMISSIONS ON THIS FORM MAY BE USED AS A BASIS FOR LEGAL ACTION.

Referred _____ By Whom _____ Called on ad _____ Which paper ____ ____ ____ Saw Sign on Property ____
(Post  Sun  Other)
Other–please explain briefly _____

| PURCHASER I | PURCHASER II |
|---|---|
| Name _Benjamin F. Fantroy, Sr._ | Name _____ |
| Address _1002 59th Ave., Capt. Hts. MD._ _20743_ | Address _____ |
| Phone _(301) 925-8959_ | Phone _____ |
| Social Security No _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_ | Social Security No. _____ |
| ☒ Own ☐ Rent. Lease Expires _____ | Employed by: _____ |
| Employed by _Shirl's Furniture_ | Address: _____ |
| Address _936 Rhode Isl. Ave, N.E._ | |
| | Occupation: _____ |
| Occupation _Store Manager / Part owner_ | Salary: (Gross) $ _____ No. of years _____ |
| Salary: (Gross) $ _80,000.00_ | Phone _____ |
| Overtime _____ Phone: ____ | |
| If Self-Employed–Gross Income $ _80,000.00_ | EXTRA EMPLOYMENT OF PURCHASER I OR PURCHASER II, if applicable: |
| Year to Date Net Income _79,500.00_ | Employed by: _____ |
| PREVIOUS EMPLOYMENT, if on present job less than two years: | Address: _____ |
| Employed by _____ | |
| Address _____ | Occupation: _____ |
| | Salary: (Gross) $ _____ No. of years _____ |
| Occupation _____ | Phone: _____ |
| Salary: (Gross) $ _____ No. of years _____ | Other extra income: (if applicable) |
| Reason for leaving _____ | Reserve Unit: $ _____ Disability: $ _____ |
| _____ | Investments: _____ Remarks: _____ |
| _____ | Rental Income: _____ |
| _____ | Other: _____ |

| ASSETS: | | | LIABILITIES: | TOTAL | Monthly Payment |
|---|---|---|---|---|---|
| Bank accounts: (Name) | Type of Account (Savings/Checking) | Balance on Deposit | Automobile: | $_____ | $_____ |
| _Benjamin Fantroy_ | | $ _9,000.00_ | | $_____ | $_____ |
| _____ | _____ | $_____ | Property: | $_____ | $_____ |
| _____ | _____ | $_____ | | $_____ | $_____ |
| _____ | _____ | $_____ | | $_____ | $_____ |
| U.S. Savings Bonds: | | $_____ | Payments made to: _____ | | |
| Stocks or other Bonds: (Current Value) | | $ _20,000.00_ | _____ | | |
| Life Insurance: (Face Value) | | $_____ | _____ | | |
| Cash surrender value of Insurance | | $_____ | _____ | | |
| Property Owned: | | Current Value | _____ | | |
| Address _1020 Rhode Isl. NE_ | | $ _5,090000_ | _____ | | |
| Equity: $ _200,000.–_ | | | | | |
| Address _____ | | $_____ | Other: (installment accounts, etc.) | | |
| Equity: $ _____ | | | | Balance Due | Monthly Payment |
| Address _____ | | $_____ | _____ | $_____ | $_____ |
| Equity: $ _____ | | | _____ | $_____ | $_____ |
| Household furnishings: (current value) | | $ _15,000_ | _____ | $_____ | $_____ |
| Automobile: Yr _1994_ Make _Ford_ | | $ _10,000_ | _____ | $_____ | $_____ |
| Yr _1993_ Make _Cadi_ | | $ _8,000_ | _____ | $_____ | $_____ |
| Other assets | | $_____ | Support payments (Alimony, parents) | | |
| Unusual remarks | | | | | $_____ |

Rent Payments: $ _____
Has purchaser declared bankruptcy in past 5 years? Yes _____ No _____

What is source of money needed for down payment and settlement charges (bank accounts, bonds, insurance, etc.) _____

Are there any outstanding judgments, lawsuits or tax liens current  ☐ Yes ☐ No
Amount $ _____ If yes, use reverse side for details
Are you aware of any factors or conditions that could adversely affect your ability to obtain a mortgage loan?  ☐ Yes ☐ No  If yes, use reverse side for details
The foregoing information is true and accurate to the best of my knowledge and belief. Purchaser expressly permits the revelation of the above information to the Seller and Seller's agent only for the purpose of establishing Purchaser's reported ability to consummate this transaction.

SIGNED _Benjamin F. Fantroy_          SIGNED _____
DATE _12-15-03_                        DATE _____

cc: L&F  Customer
9/00

LF022



**PARAGON**
**MORTGAGE**

*& financial*
*services corp.*

15654 Club House Road
Suite 315
Gaithersburg, MD 20878

800 694 7515
Phone 301.590.9390
Fax 301.590.9438
www.paragonmortgage.net

December 11, 2005

To Whom This May Concern

Please be advised that Mr. Fantroy has recently applied for a mortgage loan with Paragon Mortgage & Financial Services Corp. Based upon review of the documents provided during the loan application process and review of his credit, he has been approved for a loan up to $300,000.

This approval is based on a satisfactory appraisal and clear title search. Please feel free to contact me with any questions.

Thank You

Bruce Desarnick
Loan Officer